## W. H. DOHERTY v. DES MOINES CITY RAILWAY COMPANY, Appellant.

**Appeal:** LAW OF THE CASE: STREET RAILWAY: CROSSING ACCIDENT:
1 NEGLIGENCE: EVIDENCE. The determination on a former appeal that the question of plaintiff's contributory negligence was for the jury, constitutes the law of the case on that question on a subsequent appeal, unless the evidence on the second trial was materially different. In the instant case the additional evidence on the second trial is held insufficient to show as a matter of law that plaintiff did not exercise due care in looking for an approaching street car, as he was about to cross the track with his team and wagon.

**Street railways:** CROSSING ACCIDENT: CONTRIBUTORY NEGLIGENCE. It is the duty of one in crossing a street car track to avoid a collision with an approaching car if he sees it, even though running at an excessive rate of speed; but in making his observations and in exercising reasonable care for his safety, he is not bound to assume that an approaching car is running at an unlawful speed.

**Same:** NEGLIGENCE: INSTRUCTION. The court instructed that in determining whether the street car company was negligent in the instant case the jury should consider the definitions of negligence and ordinary care as elsewhere given, the nature of defendant's business, the physical condition at the place of accident, the lawful speed of street cars and the actual speed of this car at the time of the accident, what signals were given, what the motorman did or should have done under the circumstances and what he did or should have done after discovering plaintiff, together with all other circumstances bearing on defendant's negligence. *Held,* that the instruction was not objectionable as stating merely general rules of law without applying them to the facts. That in view of other instructions defining negligence and ordinary care, and a correct statement as to what would render defendant liable, it is also held that the jury could not have understood that defendant would be liable for what the motorman should have done merely, rather than for what he should have done in the exercise of ordinary care.

**Same:** LAST CLEAR CHANCE. Nor is the instruction objectionable as introducing the question of defendant's liability under the last clear chance doctrine because the jurors were told to consider "what said motorman did or should have done after discovering plaintiff," the language in the connection in which it should be read having reference to the motorman's negligence before the accident and without regard to plaintiff's negligence.

**Same:** NEGLIGENCE: INSTRUCTION. An instruction that the question of whether defendant was negligent in operating the car at a dangerous rate of speed without ringing the bell, and in not watching the track and crossing for vehicles, should not have led the jury to believe that failure to watch the track, etc., was submitted as a separate ground of negligence; since the same was merely incidental to the negligence charged in running the car at a dangerous speed.

**Same.** A general statement of an abstract proposition, without any indication of its application to the facts, is not necessarily prejudicial error: As where the court told the jury that a street railway crossing is a place of danger and those using it are presumed to know that fact and required to use their senses to avoid

accident, that plaintiff, in the absence of knowledge to the contrary, had the right to assume that defendant would use ordinary care, and that defendant likewise might assume that plaintiff would exercise such care; and it is held that the above instruction could not have misled the jury into believing that reliance by plaintiff on the exercise of such care by defendant would relieve him from exercising like care.

Instructions: REFUSAL. Refusal to give requested instructions, which in so far as they contain correct principles of law are covered by those given, is not erroneous.

Street railways: NEGLIGENCE: EVIDENCE. Under a petition in an action for injuries sustained from collision with a street car, in which it was alleged that the car was run at a dangerous rate of speed, and prohibited by ordinance, the ordinance regulating the rate of speed was admissible on the question of negligence. And even though the allegation may have been objectionable as a conclusion, still no objection having been made to the pleading, it was not the duty of the court to exclude evidence which would have been competent had the pleading been more specific.

Expert evidence. Where the opinion of an expert witness in answering a hypothetical question is limited to matters of which he has testified, the question is not objectionable on the ground that the facts supporting his opinion were not stated to the jury.

Street car accident: DAMAGES. Plaintiff was permanently disabled in a street car collision, suffering paralysis of the lower limbs. *Held*, that a verdict for $2500 was not excessive.

*Appeal from Polk District Court.*—HON. JAMES A. HOWE, Judge.

THURSDAY, JUNE 3, 1909.

REHEARING DENIED WEDNESDAY, SEPTEMBER 29, 1909.

ACTION to recover damages for personal injuries alleged to have been received by plaintiff as the result of a collision with a street car on one of the streets of the city of Des Moines. On the previous trial of the case there was a verdict and judgment for plaintiff from which

the defendant appealed, and the judgment was reversed. See 137 Iowa, 358. On a retrial the evidence was substantially as on the former trial, and there was again a judgment for the plaintiff on a verdict of the jury in his favor, from which defendant appeals.—*Affirmed.*

*Guernsey, Parker & Miller,* for appellant.

*H. E. Spangler* and *Gillespie & Bannister,* for appellee.

McCLAIN, J.—In the opinion rendered on the former appeal the circumstances of the accident and the allegations as to defendant's negligence were sufficiently set out to indicate the nature of the controversy as now presented. See 137 Iowa, 358.

I. On the former appeal it was strenuously insisted for appellant that the evidence conclusively showed contributory negligence on the part of plaintiff, and that a motion to direct a verdict for the defendant should have been sustained. With reference to this contention, we said that, while the argument in its support was not without persuasive force, the court must decline as did the trial court to disregard the testimony of plaintiff that he exercised reasonable care in looking for an approaching car, and failed to discover the car which collided with him until it was so close upon him that he was unable to avoid the collision; and we held that it was not error to submit the case to the jury. Unless the evidence on the last trial was materially different from that on the former trial, we would not be justified in disregarding this announcement of our conclusion in that respect which became the law of the case. A petition for rehearing was earnestly argued, and the question as to the sufficiency of the evidence to sustain the finding of the

1. APPEAL: law of the case: street railway: crossing accident: negligence: evidence.

jury that plaintiff was free from contributory negligence was again considered, with the result that the petition was overruled. We do not feel that we would be justified in an elaborate re-examination of the evidence which we thought on the former presentation of the case was sufficient to take the issue as, to contributory negligence to the jury for determination.

The only new evidence on the question to which our attention is now directed in argument consisted of three photographs taken nearly three years after the accident, showing the view which it was contended plaintiff must have had of the street which he was approaching, and along which came the car that collided with him, had he looked in the direction from which the car was .coming at the time he crossed the sidewalk on the south line of the street or at any time thereafter until he reached the track; and counsel contend that from these photographs it is manifest that, had plaintiff looked along the street in the direction from which the car approached, he must have seen it if it was within such distance that proceeding at the rate of speed he testifies his team to have been going a collision should occur before he had crossed the track. The argument is, in short, that he did not look as he testified; for, if he had looked, he must necessarily have seen the car. It must be borne in mind, however, that the evidence tended to show the car to have been running at an excessive rate of speed, and that the time which would elapse between the first appearance of the car around a curve some distance away and the occurrence of the collision would depend on the rate of speed as to which the testimony was at variance. We can not enter into nice calculations as to the number of seconds required for plaintiff's team to pass from the sidewalk to the track, nor as. to the number of seconds required for a car traveling at a high but uncertain rate of speed to cover a given distance. The photographs show numerous telephone and electric

light poles along the curb line which would to some extent
obstruct the clear view of the street, especially if the
plaintiff looked along the street just as he crossed the side-
walk and turned into it; and we can not say as a matter
of law that his testimony that he looked in the direction
from which the car was coming without seeing any car
before he looked for a car that might be coming from the
other direction is unworthy of credence.   If this story
was true, then he was not conclusively at fault; for, as
he approached the track, he made such observations in each
direction as would reasonably be required of a prudent
person using a public street.

Counsel for appellant in argument set the time of
the accident at eight o'clock in the evening instead of half
past nine as assumed in the former opinion.   If the evi-
dence in this respect was different from that on the former
trial, the difference was favorable to the plaintiff, and
makes a stronger case than that on the former trial, for
at eight o'clock in the evening of a day in August there
would not necessarily be such a degree of darkness as to
render an electrically lighted car at considerable distance
seen through a row of poles as conspicuous as it would be
an hour and a half later.   Counsel ask us to picture to
ourselves the brilliancy and conspicuousness of such a
car approaching through the night, but we are not justified
in depending very much on the imagination in this re-
spect.   The argument would be entitled to its weight with
the jury to which it was no doubt pressed with full force,
but we are not irresistibly driven to the conclusion that,
even though the car had come within the range of possible
vision, the plaintiff might not in looking along the street
as a reasonably prudent person should do under the cir-
cumstances have overlooked it as it emerged from around
the curve in the street some distance away.

It is to be borne in mind, also, that plaintiff's ab-
solute duty was only to look far enough along the street

for a car which approaching at a lawful rate of twelve miles an hour would overtake him before he had crossed the track. If he actually saw a car approaching at a greater rate of speed, it would be his duty to avoid a collision with it, but, in exercising reasonable care in discovering the approach of a car which might imperil his safety, he was not bound to assume a greater rate of speed than that provided by the ordinances of the city.

2. STREET
RAILWAYS:
crossing
accident:
contributory
negligence.

It is sufficient to say in conclusion on this question that the three new photographs introduced on the last trial do not show any state of facts different from that clearly apparent from the evidence, including numerous photographs presented on the first trial. Every conclusion now urged upon us as necessarily drawn from the evidence was required under the record as presented on the former appeal if required now, and we do not feel warranted in a further discussion of evidence which on the former appeal we held to be sufficient to take the case to the jury on the question of contributory negligence.

II. There are several assignments of error relating to the giving and refusal of instructions, and these may be considered together. After stating that negligence in two respects was charged, and in a general way defining ordinary care and negligence with reference to the allegations of negligence on the part of defendant and the question of contributory negligence on the part of plaintiff, the court instructed the jury as follows:

3. SAME:
negligence:
instruction.

In determining whether the defendant was negligent, you will consider the definitions of 'ordinary care' and 'negligence' elsewhere given you in these instructions; and you will consider, as shown by the evidence, the nature and character of the business in which the defendant was engaged, the location where the accident is alleged to have occurred, and the surroundings thereabouts; whether it

was light or dark at said place at said time; the rate of speed at which a street car might lawfully have been running at the time and place where it is said that plaintiff was injured; the rate of speed at which said car was being run at said time; what sounds or signals, if any, were or *should have been given* from said car at or immediately before the happening of the accident in question; what the motorman of said car did, *or should have done,* as he ran said car along the street at said time and place; what said motorman did *or should have done after discovering the plaintiff, his team and wagon;* what said motorman knew *or in the exercise of ordinary care should have known;* what said motorman did, *or in the exercise of ordinary care should have done,* together with any other facts or circumstances disclosed by the evidence showing or tending to show that the defendant was or was not negligent as alleged by the plaintiff in his petition.

It is objected to this instruction that the court simply groups facts and circumstances, some of which indicate care, while others indicate negligence or lack of care, and fails to point out their applicability to the issues or to give any guide to the jury in applying the law to such facts, but we think the jury could not possibly have misunderstood the bearing of the facts and circumstances referred to. The instruction is not open to the objection that it gives merely general rules of law. It directs the jury to consider the bearing of facts and circumstances as to which there was evidence.

Another objection made to the instruction is that it refers, as indicated by the italicized clauses (the italics being employed by the appellant in argument only for the purpose of making clear the point of objection), to what as a matter of fact the motorman did or should have done, without specifying in that connection, as he specifies in other connections, that the inquiry should be as to what he did or in the exercise of ordinary care should have done, or what he knew or in the exercise of ordinary care should have known. And the argument is that the

jury would have understood from this language that they might have found defendant liable for something which the motorman should have done as distinct from that which he, in the exercise of ordinary care, should have done. It may be that the language used is not entirely harmonious throughout in its phrasing, but there is not the slightest doubt, it seems to us, that the jurors must have understood, in view of the previous correct definitions of negligence and ordinary care and explanation of what would render the defendant liable, that what the motorman should have done was to be determined by ascertaining what ordinary care, as already defined, required him to do. We can not believe that the instruction was in any way misleading in this respect.

It is further said by way of criticism of the instruction that it introduced into the case the question as to the applicability of the rule relating to the last fair chance,

4. SAME: last clear chance.

although no issue of that kind was submitted to the jury. The language relied upon is that in which the jurors are told to consider "what said motorman did or should have done after discovering the plaintiff, his team and wagon." This language is, however, as we think, clearly applicable to the question of the negligence of the motorman prior to the accident, and without any regard whatever to contributory negligence on plaintiff's part. It has no reference, as is apparent by reading it in the proper connection, to the duty of the motorman after discovering that plaintiff was in a position of peril through his own contributory negligence.

It is further urged that in stating the issues as to defendant's negligence the court erred in saying that one

5. SAME: negligence: instruction.

of these issues was as to whether defendant was negligent "in operating its said car at a high and dangerous rate of speed, without ringing the bell, and not watching the track, surround-

ings, and street crossings for vehicles;" the contention being that, by this language, the court told the jury that they might find the motorman negligent in not watching the track, surroundings and street crossings for vehicles, although there was no testimony showing or tending to show that the motorman was negligent in this respect. But this claim is based upon the assumption that failure to watch the track, etc., was an independent ground of negligence submitted for determination, whereas from the language it is plain that it is simply an element or incident of the negligence charged in the operation of the car at a high and dangerous rate of speed. This would have been perfectly manifest had the court used "without" instead of "not" preceding the words "watching the track," and we are satisfied that the somewhat inaccurate phrasing of the clause of the instruction in question could not have misled the jury into thinking that another allegation of negligence than that relating to the operation of the car was submitted to them. No prejudice could possibly have resulted to the defendant from the form of phrasing which the court resorted to in stating the second ground of negligence relied upon.

Another instruction is complained of, which was in the following language: "A street railway crossing is a place of danger, and every one who uses it is presumed to know such fact, and is required to use the senses with which he is invested by nature to avoid accident. While the plaintiff, in the absence of knowledge to the contrary, had a right to assume that the defendant would exercise ordinary care, the defendant also, in the absence of knowledge to the contrary, had a right to presume that the plaintiff would exercise ordinary care." It is said this is simply a general statement of an abstract proposition without any indication of its application to the facts or the issues. Even if this be so, it does not necessarily constitute prejudicial error. But it is urged

6. Same.

further that the statement is misleading, in that the jury might have been led to believe that reliance by plaintiff on the exercise of ordinary care on the part of the motorman would relieve him from the exercise of like care on his part. The first sentence of the instruction negatives this thought, and we are satisfied that there was nothing in the instruction as a whole tending to mislead the jury in regard to the duty of plaintiff to use ordinary care, regardless of what he might have a right to expect on the part of the defendant.

The refusal of the court to give certain instructions asked for the defendant is assigned as error. Two of these relate to the duty of the plaintiff to look along the 7. INSTRUCTIONS: street after he was in such situation as that refusal. he could see an approaching car before attempting to cross the track, another to his duty, if he knew or should have known that a car was so near that there was danger of a collision, to stop his team for the purpose of avoiding a collision, and still another to the right of the motorman to assume, when he saw plaintiff and his team approaching the track in front of the car, that plaintiff was in the possession of his faculties, and would use ordinary care in giving way and permitting the car to pass. Without stopping to discuss the abstract correctness of these instructions, which we could not do without setting them out at length and with undue elaboration, it is sufficient to say that so far as they contain correct propositions of law they are fully covered by the instructions given.

III. Error is assigned in receiving in evidence an ordinance of the city regulating the speed of cars, from which ordinance it appeared that at the place where the 8. STREET accident occurred a speed in excess of twelve RAILWAYS: miles per hour was prohibited. In the negligence: evidence. petition it was alleged that the car was operated "at a high and dangerous rate of speed of over

twenty miles per hour, which speed was prohibited by law and the Revised Ordinances of the city of Des Moines." This was a material element of the negligence charged, and we can see no reason why it was not competent to prove. the fact by introducing the ordinance in evidence. There was no issue as to the existence of the ordinance, nor was there any reliance placed upon the ordinance as a basis of the right of action. The allegation was of negligence, and the ordinance was competent as an item of evidence bearing on that issue. Plaintiff was not suing for damages on account of a breach of the ordinance, and therefore the authorities cited for appellant to the effect that, when an ordinance is relied upon, it must be pleaded, are not in point. Even if the allegation that the speed was in violation of an ordinance was objectionable, as the statement of a mere conclusion of law, nevertheless, no objection of that kind having been made to the pleading, it was not the duty of the court to exclude evidence which would have been competent had the pleading been made more specific, as it might well have been had objection thereto been urged at the proper time.

IV.   Objections to a hypothetical question asked of an expert medical witness were overruled, and error is assigned in such ruling, but an examination of the record 9. EXPERT setting out the entire testimony of the witEVIDENCE. ness shows that he was limited in his statement of opinion to the matters which he testified to on the stand, and it therefore is apparent that the complaint, because all the facts upon which the witness relied for his conclusion were not stated to the jury, is without foundation.

V.   The complaint that the damages allowed by the jury are excessive seems to us to be with10. STREET CAR ACCIDENT: out foundation. The injury was a very seridamages. ous one, and, as a result, the plaintiff is suffering from paralysis of his lower limbs. Without further

detailing the suffering and permanent disability which the evidence tends to show were the result of the injury, it is sufficient to say that we are satisfied that the verdict of $2,500 which was rendered by the jury was not beyond that which a reasonable exercise of discretion justified them in giving.

Finding no error in the record, the judgment is *affirmed.*