James Long, by His Next Friend, W. H. Long, Appellee, v. The Ottumwa Railway and Light Company, Appellant.

**Infants:** CONTRIBUTORY NEGLIGENCE: QUESTION OF FACT.   On the
1   question of the contributory negligence of a child consideration must be given, not only to the acts which he did or omitted to do, but also to its age, experience and maturity of judgment; and where the child is quite young the power and influence of childish instincts are not to be overlooked.  Generally maturity of mind, capacity to act intelligently in the presence of danger and ability to recognize and avoid peril, are questions to be determined from all the circumstances of the particular case; and under the practice of this state are for the jury rather than the court, where upon any reasonable theory fair minded men may differ.

**Same:** PUBLIC STREETS: RIGHTS OF CHILDREN.   A child is not a
2   trespasser upon the public streets but has the same rights therein as an adult; and while held to an exercise of such care as his years, experience and capacity may afford, the driver of any vehicle is bound to anticipate his presence and to exercise reasonable care commensurate with his age to avoid injuring him.

**Same:** CONTRIBUTORY NEGLIGENCE.   The mere fact that had one upon a
3   public street looked in time he might have avoided collision with a street car, is not necessarily negligence as matter of law, even in an adult.

**Same:** CONTRIBUTORY NEGLIGENCE: EVIDENCE: SUBMISSION OF ISSUE.
4   Where all the facts are such as to raise a fair doubt as to the contributory negligence of a child in crossing a street in front of an approaching street car, the question of such negligence is for the

jury and should not be determined by the court as a matter of law. In the instant case the question of plaintiff's negligence in passing in front of a car, operated at an unlawful rate of speed, was for the jury, although he had an unobstructed view of the car for some distance.

**Street railways:** NEGLIGENCE: EVIDENCE. Where one upon a public street leaves a place of safety and steps directly in front of an approaching street car and is injured the company is not liable; as those operating the car may assume that he would remain in the place of safety until the car had passed. In the instant case the evidence fails to show as a matter of law that plaintiff left a place of safety and passed in front of defendant's car.

**Same:** INSTRUCTIONS. It is the duty of the motorman of a street car when discovering a pedestrian approaching the crossing under circumstances sufficient to excite reasonable apprehension of a collision, to sound an alarm and, if necessary, to use all means at hand to slow down the car. The instruction in the instant case requiring the motorman to use all reasonable efforts to avoid the accident was not improper, as fixing too high a degree of care.

**Same:** CONTRIBUTORY NEGLIGENCE: INSTRUCTION. Evidence that plaintiff, a child, who was returning home with a toy which had been given him, and in which it may be inferred he was interested when struck by defendant's street car, was sufficient basis for instructing the jury that they might consider the diversion of plaintiff's mind, on the question of his contributory negligence.

**Same.** Where a street car was exceeding the speed limit the motorman was not authorized to presume that plaintiff would not leave a place of safety and attempt to cross the track in front of his car, unless plaintiff knew the car was exceeding the speed limit; as a pedestrian has a right to assume that a car will be lawfully operated.

**Municipal corporations:** ORDINANCES: RATE OF SPEED: CONSTRUCTION. A municipal ordinance regulating the speed of street cars will be presumed as intending to fix a limit to their rate of speed beyond which they cannot be lawfully operated, and it will be construed if possible so as to give it the intended effect. Thus an ordinance providing a certain "average" rate of speed will not be construed to mean that cars may be run at a greater speed in some places and less in others, even though the effect, if possible, would be to give the word "average" its usual meaning; but it will be presumed that the municipality intended to regulate and fix the maximum speed, save only in exceptional cases.

**Street railways:** CONTRIBUTORY NEGLIGENCE: INSTRUCTION.   A child is not guilty of contributory negligence, in attempting to cross a street in front of an approaching street car, simply because he knew of the running of cars on the street and of the danger incident to crossing, but failed to look and listen; the proper test being whether he exercised the care and caution required of one of his years and intelligence.

**Same:** INSTRUCTION.   When the court gives the jury the rules of law directly applicable to the case it is sufficient; and a requested instruction concerning a collateral issue, though in a strict sense not irrelevant, may properly be refused.

**Same.**   A requested instruction concerning the duty of defendant to run its cars on schedule time for the accommodation of the public, which advised the jury that the cars should be stopped or slackened only when there was a necessity, was properly refused; there being no attempt to tell the jury what constituted a necessity.

**Personal injury:** EXCESSIVE DAMAGES.   Plaintiff, a boy nine years of age, was run over by defendant's street car and lost part of his foot.   His shoulder was broken, his arm injured, his face was bruised and he suffered considerable pain.   His claim also included his father's right to reimbursement for medical services and care, and the loss of plaintiff's services.   *Held*, that a verdict of $7,500 was not excessive.

*Appeal from Wapello District Court.*—HON. D. M. ANDERSON, Judge.

THURSDAY, SEPTEMBER 25, 1913.

ACTION at law to recover damages for personal injury. Verdict and judgment for plaintiff, and defendant appeals. —*Affirmed.*

*McNett & McNett*, for appellant.

*I. L. Duke* and *Jaques & Jaques*, for appellee.

WEAVER, C. J.—The plaintiff, a boy nine years and five months old, was struck and severely injured by an electric car which was being operated along the track of the defendant's railway in the city of Ottumwa. He alleges that the accident was occasioned by the negligence of the defendant and without contributory negligence on his part. The negligence charged is that the car was being operated at an excessive and dangerous rate of speed; that the car was being operated at a speed in excess of the limit fixed by the ordinances of the city; and that the driver of the car neglected and failed to give any warning of its approach by ringing a bell or sounding a gong. It is further alleged that the driver saw the lad in danger and by the exercise of reasonable care could have avoided injuring him but failed to do so. The defendant admits that plaintiff was injured by one of its cars but denies all other allegations of the petition. The issues were tried to a jury and verdict returned in favor of plaintiff for $7,500. It should be noted also that plaintiff's father assigned to him all claim against defendant for loss of the son's service and for the expense of his care, nursing and medical attendance, and that these items were included in the petition and the demand for judgment. Defendant's motion for new trial was denied, and, judgment having been entered upon the verdict, defendant appeals.

I. In an elaborate and carefully prepared brief, counsel for appellant earnestly urge the proposition that as a matter of law plaintiff is chargeable with contributory negligence and therefore not entitled to recover damages. Before entering upon a consideration of this legal phase of the case, it is essential that we state as briefly as practicable the facts which the evidence tends to establish. In so doing we, of course, give to the testimony of the witnesses the most favorable interpretation of which it is fairly capable in support of the verdict of the jury.

It is true that in many respects the facts as here recited are the subject of dispute, but the credibility of the witnesses

and the weight to be given their version of the accident and

**1. INFANTS: contributory negligence: question of fact.**

its attending circumstances were matters for the jury alone. At the place where the injury occurred the street railway track is laid along the middle of Wabash avenue, which extends east and west. The avenue is here crossed by James street extending north and south. The avenue and street are each sixty feet in width. Plaintiff lived with his parents on the northwest corner of the intersection, and immediately south of his home on the opposite side of the avenue or southwest corner of the intersection lived Mr. Cohagen. The sidewalks on each side of James street were connected by crosswalks which intersect the avenue and railway track at right angles. The line of Wabash avenue is straight, and a car moving thereon is visible in either direction from the crossing for a distance of several blocks. The car which struck the boy had been to the end of its run a distance of about six hundred and fifty feet to the east of James street and there turned about for the run westward. It was about 6:30 in the evening of April 8th. The car was at this point carrying no passengers and was occupied by the conductor and motorman alone. The boy was struck upon the western crosswalk extending between the Cohagen corner and the home of the Longs. He had called at the Cohagens, where some one had given him a "cotton chicken," which we assume to have been one of the familiar Easter toys designed for the amusement of children. With the chicken in his hand he started on a run toward home, taking his way upon or along the west crossing of the avenue. His attention was absorbed in looking at the toy and he did see or hear the approaching car until too late to escape. There is evidence that when he was within a short distance of the track (a few feet at most) a girl at the Cohagen house saw his peril and called to him, and that for an instant he paused or hesitated but still did not seem to see the car and continued to run to the north until he was struck by the fender of the car and rolled under the wheel,

which crushed his foot and otherwise injured him. According to his own story he did not hear the warning cry, or, if he did, he failed to comprehend it and did not discover the car bearing down upon him.

The testimony of the motorman and conductor is to the effect that their first view of the plaintiff disclosed him standing still on the crossing, and that, supposing that he was waiting there for the car to pass, they did not at first check their speed, and that when they reached a point about in the middle of James street the boy ran forward and into collision with the car. They claim that he did not reach the track but came sufficiently near to be struck by the corner of the car or vestibule. Bearing on the question of contributory negligence on plaintiff's part as well as on the charge of negligence against the defendant, it should further be said that there was evidence tending to show that the car was then being operated at a speed estimated as high as twenty miles an hour, and that it approached the crossing without sounding the gong or bell or other warning than such as would naturally be given by the noise arising from its movement. The plaintiff was at this time nine years and five months old, a boy of average brightness of mind. He was in good health and had unimpaired senses of sight and hearing. He had lived at this place for several years and was accustomed to the sight of cars moving over defendant's track. We have omitted also to note at the proper place that upon this part of defendant's railway it operated but a single car which was scheduled to pass this corner to the west at intervals of twenty minutes.

In support of their contention that plaintiff should be charged with contributory negligence as a matter of law, counsel have cited and quoted from a large number of authorities where the rule has been applied to children of ages varying from five to fourteen or more. The precedents very generally agree in stating the rule that, in considering the question of contributory negligence of a child reference

must be had not only to the bare facts of what he did or omitted to do but due consideration must be given also to his age, experience, and maturity, or immaturity of judgment, and in this connection, especially where the child is quite young, the power and influence of childish instincts are not to be overlooked. *McEldon v. Drew*, 138 Iowa, 395; *Railway Co. v. Sherman*, 25 Colo. 114 (53 Pac. 322, 71 Am. St. Rep. 116); *Huff v. Ames*, 16 Neb. 139 (19 N. W. 623, 49 Am. Rep. 716). While courts have sometimes sought to fix an age at which the presumption of capacity of a child to negligently contribute to its own injury begins, it has been better said that "the law fixes no arbitrary period when the immunity of childhood ceases and the responsibility of life begins." *Nagle v. Railway Co.*, 8 Pa. 35 (32 Am. Rep. 413). Generally speaking, maturity of mind and judgment, capacity to act promptly, intelligently, and efficiently in caring for one's self in the presence of danger, and ability to recognize the imminence of threatened peril in time to avoid injury therefrom is a question of fact depending upon arguments, inferences, and conclusions to be drawn from all the circumstances of the case. It is a question upon which the man on the bench holds no advantage over the average man in the jury box. The varying capacities of children are matters coming under the daily and hourly observation of jurors no less than of lawyers and courts. It requires no scholastic training or study of legal precedents to qualify them to make fair and intelligent findings upon an issue of this character.

With this for a preface, we turn for a moment to the authorities upon which appellant places reliance. They are too numerous to permit of their review in detail. Taken in connection with the precedents cited by appellee and many others to which no reference has been made, they indicate that, while the statement of the general rule is not the subject of substantial controversy, its application has given rise to a great variety of views, and that reconciliation of all the decided cases upon any consistent theory is impossible. It

is to be remembered, and we mention it in no spirit of criticism, that the courts in some jurisdictions exercise the power to direct verdicts and particularly to pass as a matter of law upon questions of alleged negligence and contributory negligence much more freely than is done in other jurisdictions. Which is the better or more justifiable tendency we need not here consider.

It is enough to say that the courts of this state are among those which always refuse to dispose of fact questions in a jury case as a matter of law if, upon any reasonable theory of the circumstances shown or admitted, honest and fairminded men may arrive at different conclusions.

Of the cases cited for appellant some are easily distinguishable from the one at bar; for example, cases in which the question is complicated by the admitted or proved trespass of the complaining infant. There are others, however, where children have been run over by railway cars in the public street under circumstances not very unlike those with which we have here to deal, and courts have held them without remedy because of their alleged contributory negligence. This has been applied in some instances to children of only five to eight years of age. We frankly say that holdings of this extreme character do not appear to our judgment as consonant with law, reason, or justice, and we cannot persuade ourselves to follow them. A child in the public street is not a trespasser. His right there is as sacred as that of his adult neighbor or the owner of a wagon or automobile or street car. True, he is charged with the duty of exercising such care for his own safety as a child of his years, experience, and capacity may fairly be presumed to possess, but the driver of a vehicle of any kind is no less bound to anticipate the presence of children upon the public way and to exercise reasonable vigilance to avoid injuring them. In so doing he is not justified in assuming that a young child will manifest the judgment and prudence of an experienced man and must

2. SAME: public streets: rights of children.

govern his own conduct with some reasonable degree of respect to that fact. The younger the child, and the less able he is to look out for himself, the greater the care which may be reasonably exacted of those operating dangerous agencies in the public street to avoid injuring or killing him. Whether in any instance, these rules of due care on the part of the child and of the party charged with his injury have been observed depends, as we have already said, on so many circumstances and such an investigation into the pertinent facts that it is difficult for us to imagine a case involving the conduct of a child of nine years where a court may properly withdraw the question from the jury and hold him chargeable with contributory negligence as a matter of law. The recent case of *McEldon v. Drew*, 138 Iowa, 390, does not relate to an injury upon a public street but it concerns the conduct of a boy twelve years old whose knowledge of the dangerous agency which injured him was certainly as apparent as this nine year old plaintiff's knowledge of street cars. In that case we held the trial court erred in directing a verdict for defendant, saying: "It must be a strong case to justify a court in holding that a child twelve years of age is guilty of contributory negligence." The period in the life of a boy from nine to twelve years of age is ordinarily one of rapid development in both mental and physical powers, and, if the quoted ruling is to stand, it applies with correspondingly greater force to this case.

It is true that if plaintiff had looked in time he could have seen the approaching car and by stopping would have avoided injury. But it has often been held that failure to see a car bearing down upon a crossing is not

3. SAME: contributory negligence.

necessarily negligence as a matter of law, even in an adult. *Dow v. Railway Co.*, 148 Iowa, 445; *Roberts v. Railway Co.*, 23 Wash. 325 (63 Pac. 506, 54 L. R. A. 184); *Perjue v. Citizens' Co.*, 131 Iowa, 710; *Ward v. Railway Co.*, 132 Iowa, 578; *Powers v. Railway Co.*,

143 Iowa, 427; *Doherty v. Railway Co.*, 144 Iowa, 26; *Erdman v. Railway Co.* (Mich.), 141 N. W. 542.

In this case there was an existing ordinance of the city of Ottumwa providing that no street car should be run upon residence streets of that city at a greater average speed than

**4. SAME: contributory negligence: evidence: submission of issue.** fourteen miles an hour nor less than an average of eight miles an hour except at those times and places where such rates of speed would be negligence. The trial court adopted the view of which we shall later refer that under this ordinance fourteen miles was the limit of allowable speed over a street crossing, and, if that be the law of the case, then plaintiff, even if held to the responsibility of an adult, was justified in assuming the defendant's obedience to the ordinance and governing his action in crossing the street accordingly. Two witnesses swear that the car was being driven at eighteen to twenty miles an hour and without any slackening of the rate as it came to the crossing. Now, if this be true, the boy would have had ample time to cross the track and reach the zone of safety on the north side before the car reached that point in its trip if the speed had not exceeded the legal limit, or, to say the very least, it was a jury question whether he might not reasonably so believe. This is the doctrine of both the *Powers* case and the *Doherty* case above cited.

Again assuming, as we must, for the purposes of this case that the car was being run only at intervals of twenty minutes, that it was coming at a high rate of speed, that the attention of plaintiff was childishly absorbed in the Easter chicken with which he was hastening home, was it for the trial court to say, or is it for us now to say, that no unbiased mind can fairly reach the conclusion that the lad was as careful as can reasonably be expected for one of his years under all the circumstances of the case? We are not willing to so hold. This view finds support in the reasoning employed in many well-considered cases. For example, the Colorado court under somewhat different circumstances has had occa-

sion to consider how far an immature child may be held guilty of contributory negligence as a matter of law. The boy in that instance was thirteen years of age and the danger in that instance was that arising from his act in jumping from a street car in motion. After saying that if the plaintiff were an adult there could be no question of his contributory negligence, the court says:

The law only imposes upon minors, not *prima facie sui juris,* the duty of giving such attention to their surroundings and care to avoid danger as may be fairly and reasonably expected from persons of their age (1 Thomp. Neg. 431), or the caution which a child is required to exercise is according to its maturity and capacity, a matter to be determined in each case by the circumstances of that case. *Railway Co. v. Carlson,* 58 Kan. 62 (48 Pac. 635) ; *Railroad Co. v. Gladmon,* 15 Wall, 401 (21 L. Ed. 114) ; 2 Thompson, Negligence, 1194; *Railroad Co. v. Becker,* 76 Ill. 25. If there is a fair doubt as to the child being of the age and capacity that in law it should be held responsible for the act contributing to its injury, the question should be submitted to the jury to say by their verdict whether this is so or not. 2 Thompson, Negligence, 1182. In this case appellee was upward of thirteen years of age at the time of the accident, had lived for a year on the street over which the car was operated, appears to have possessed the usual intelligence of boys of that age, and would be presumed to comprehend many dangers to which he might be exposed; but was he capable of appreciating the danger to which he was exposed in this case to such a degree that he should be held responsible for a failure to exercise reasonable care and caution to avoid it? He would only be required to give such attention to his surroundings and care to avoid danger as might fairly be expected from one of his years. He was still of that age when the instincts of childhood easily dominate. Was he capable of appreciating, or did he, on account of his youth, realize the dangers to which he was exposed in alighting from a moving car to such a degree as would prompt him to be reasonably careful in so doing or refrain from it entirely?

The question thus presented the court answers by say-

ing that no impartial or fair-minded man can say it is free from doubt, and the case was not one for a directed verdict.

In *Baker v. Flint*, 68 Mich. 90 (35 N. W. 836), a boy between seven and eight years of age was playing near the railway track which he undertook to cross. The coming train could be seen at a distance of more than four hundred feet. The lad was bright, active, and intelligent. He knew that it was dangerous to cross the track in front of a moving train, and, although he could have seen the train had he looked, his attention was diverted by his play and he did not see it and was injured. If a mere child is ever to be denied redress because of contributory negligence, it would seem that this Michigan case was one requiring the application of the rule, yet the court refused so to do, saying that after considering the circumstances they ''do not think the case was one wherein the court should have directed a verdict. It was still left for the jury to say, under proper instructions from the court, whether or not the evidence satisfied them that this lad had such judgment and such comprehension as enabled him to appreciate the danger and subject him to the consequences of negligence if he failed to use his reason and senses in efforts to avoid it. This question, I think, clearly remained for the jury.''.

With reference to a crossing accident, the New York court has said that the rule which requires persons before crossing a railroad track to look to see whether trains are approaching ''is not to be applied inflexibly and in all cases without regard to age or other circumstances. The law is not so unreasonable as to . . . require the same maturity of judgment or the same degree of care or circumspection in a child of tender years as in an adult.'' *McGovern v. Railroad Co.*, 67 N. Y. 421. See, also *O'Mara v. Railroad Co.*, 38 N. Y. 445, (98 Am. Dec. 61) ; *Byrne v. Railroad Co.*, 83 N. Y. 620. To the same effect is *Mitchell v. Railway Co.*, 9 Wash. 120 (37 Pac. 341).

In New Jersey it has been held that, even ''when a child

has reached the age of discretion and is considered *sui juris* as a matter of law, the degree of care and caution required of him will be no higher than such as is usually exercised by persons of similar age, judgment, and experience, and whether that degree of care and caution has been exercised by the child in a given case is generally, if not always, a question of fact for the jury.'' *Traction Co. v. Scott*, 58 N. J. Law, 682 (34 Atl. 1094). Whether a boy of ten years is sufficiently mature to make him responsible for alleged contributory negligence is a question for the jury. *Avey v. Railroad Co.*, 81 Tex. 243 (16 S. W. 1015, 26 Am. St. Rep. 809). Negligence cannot be imputed as a matter of law to a child of eight years. *Lorence v. Ellensburgh*, 13 Wash. 341 (43 Pac. 20, 52 Am. St. Rep. 42). In the same case it is said that what care and caution a child must exercise in order to be entitled to recover in this class of cases cannot be determined by any general rule, and his capacity must be left to the determination of the jury. These citations and quotations could be extended quite indefinitely. Enough has been given, however to indicate what we deem the clear trend of the greater weight of authority.

It should also be said here that this court has in at least one case expressed the view that a child under fourteen years of age is *prima facie* incapable of contributory negligence, and the burden is on the defendant in such case to show affirmatively his capacity for the exercise of care for his own protection. *Hazlerigg v. Dobbins*, 145 Iowa, 449. That rule, if applied here, fully justifies the action of the trial court in submitting to the jury the question of the plaintiff's contributory negligence.

Of our own cases, including *Merryman v. Railroad Co.*, 85 Iowa, 634; *Masser v. Railroad Co.*, 68 Iowa, 602, and *Anderson v. Railroad Co.*, 150 Iowa, 465, relied upon by the appellant, none is inconsistent with the views here expressed. In each of the cases mentioned the plaintiff was a trespasser whose presence upon the company's cars and tracks it was

not bound to anticipate. In this case, as we have said, plaintiff was not a trespasser, and defendant was bound to anticipate the possibility of persons (including children) using the public crossing at all hours of the day. It owed the plaintiff, as one of the public rightfully using the street, a degree of watchfulness and caution which is not due to a mere trespasser. Whether that duty was observed, and whether the plaintiff on his part used the care reasonably to be expected from one of his years and capacity, was for the jury.

II. The appellant further argues that, whatever may be the rule as to contributory negligence, there is no right of recovery in this case because it is shown that plaintiff was standing in a place of safety, where the motorman was justified in assuming he would remain until the car had passed, and when the car was so near him that there was no time to stop or control its speed plaintiff suddenly ran into collision with the side or corner of the car and thus received the injury complained of, without fault of the defendant. If the record showed this state of facts without substantial dispute, it would have to be said as a matter of law that no actionable negligence had been shown.

5. STREET RAILWAYS: negligence: evidence.

But the record falls short of the claim made for it by the defense. The evidence tends to show that the vestibule on the end of the car was at least a foot narrower than the car body, and that the fender was still shorter than the width of the vestibule. One of the witnesses who saw the collision swears that the boy was struck by the "fender of the front part." He further says: "It knocked him down and rolled him about six or seven feet and ran over him." Another witness says: "He was on the rail when the car hit him. I saw the fender strike him." In corroboration of its theory that the boy ran into the car, one or more of its witnesses testify that he ran up just in time to be struck by the corner of the car and was thrown forward and away from the car; yet the physical fact remains that notwithstanding the car

body overhangs the rail about a foot and a half, and the
tendency of such a collision as defendant describes would nat-
urally be to throw the boy forward and away from the rail,
yet he was in some manner rolled under the car far enough
for his foot to be crushed by the wheels.   The natural infer-
ence is, we think, that the witnesses for plaintiff are more
nearly correct and that he was in front of the car though
probably nearer the south rail when struck.   Again the boy
testifies that from the time he started homewards he continued
running until the collision took place.   In this he is appar-
ently supported by one of the persons who saw the accident.
It is neither conceded nor proved without dispute that plain-
tiff did stop or stand on the crossing, though the motorman
says he did.   It follows of clear necessity that with the testi-
mony thus in conflict a verdict could not have properly been
directed on this ground.

III. In charging the jury upon the care required of the
motorman in operating his car along the street and over
crossings, the court, among other things, laid down the rule
6. SAME: instruc-  that, if he discovered the plaintiff upon or
   tions.           approaching the crossing in such manner as
to excite reasonable apprehension of a collision, it was his
duty to sound the alarm and if necessary to slow down the
car, and that for this purpose he should employ all the means
at hand and provided upon the car for such emergencies.
Counsel interpret this instruction with extreme literalness as
if the court thereby told the jury that if different means or
appliances, one of which was more sure or effective than
another, were furnished for stopping the car, and the motor-
man in the exercise of his best judgment used the better
appliance without avail, he would be chargeable with neg-
ligence as a matter of law if he failed to use all of them,
including the less effective one.   But such was evidently not
the meaning of the court, and we cannot reasonably assume
that the jury so understood it.   The thought of the court
appears to have been, and we think it was fairly so expressed,

that the motorman was in duty bound to make all reasonable effort to stop the car if he saw the plaintiff in peril, and if he was possessed of or supplied with means, the reasonable use of which would have prevented the collision, he could not fail to employ them without being chargeable with negligence. In this there was no error.

Moreover, the statement of the motorman's duty to use "all the means at his command" to avoid the injury is in harmony with the instructions asked by the defendant in its own behalf.

In another instruction the jury were told that, in passing upon the question of the plaintiff's contributory negligence, it was proper to consider the testimony, if any, whether the boy's mind was diverted from the danger of the threatened collision with defendant's car. This is assigned as error because there is no evidence in the record calling for instruction upon the subject of diverted attention. The point is not well taken. It may fairly be drawn from the testimony that the lad was pleased with the gift of the toy and taking it in his hand was hastening across the street with it to his own home. The joy of possession of such a gift and the pleasure to be found in examining and exhibiting it would be given slight consideration as an excuse for obliviousness to a visibly impending danger where a plaintiff has outgrown or ought to have outgrown the characteristics of young childhood, but to hold as a matter of law that such self-forgetfulness or such concentration of attention upon an amusing trifle is not what may be reasonably expected in an average boy or girl of nine years is to disregard the teachings of universal human experience and observation. The exception to this instruction cannot be sustained.

7. SAME: contributory negligence: instruction.

In still another paragraph the court instructed the jury that, if the motorman was operating his car within the speed

limit, he was not bound to anticipate that a person standing
at a crossing will suddenly run upon or
across the track in the face of imminent dan-
ger of collision, and that failure to sound a warning for the
benefit of such person would not be negligence. The use of
the qualifying phrase ''if going within the speed limit'' is
objected to as a misstatement of the law, and the claim is
advanced that, even though driving the car at an illegal excess
of speed, the motorman is entitled to the benefit of the same
presumption that the foot traveler standing or coming within
the zone of danger will not attempt to cross the track in
front of the car. The criticism is unsound. The foot traveler
may rightfully assume that the railway is being operated in
obedience to legal restrictions, and, seeing a car approaching
at such distance that he has ample time to cross the track
before the car, if not exceeding the speed limit, will reach
the crossing, he is not guilty of contributory negligence, cer-
tainly not as a matter of law, if he does attempt to cross the
track. Of this legal right in the person on the street the
motorman is presumed to be aware, and if he is driving the
car at an excessively high rate of speed he is not authorized
to assume that the foot traveler will take notice of such
excessive speed and delay his crossing to accommodate it. Of
course if the person approaching the crossing knows the car
is coming at an excessive speed, he is not justified in expos-
ing himself to danger of collision therewith.

8. SAME.

Complaint is also made of the court's instruction to the
effect that the speed of the defendant's cars upon its lines
within the residence portion of the city was limited by an
ordinance of the city to fourteen miles an
hour. This is said to be a palpable mis-
interpretation of the ordinance, the material
part of which reads as follows: ''No car
shall be run at a greater average rate of speed, including
stoppage to take on and leave off passengers, than ten miles
an hour in the business part of the city and fourteen miles

9. MUNICIPAL
CORPORATIONS:
ordinances:
rate of speed:
construction.

an hour in the residence portion thereof, nor less than an average of five miles an hour in the business portion of the city and eight miles an hour in the residence portion thereof, and not to exceed eight miles per hour in crossing the Des Moines river bridge or bridges.'' The correctness of the instruction here referred to is perhaps the most seriously debatable question presented by the record. The ordinance is, to say the least, something of a novelty and its real meaning not easy of solution. The charities of the law will not permit us to treat it as an attempt to frame a regulation which would not in fact regulate or to provide a form of limitation of speed which would be incapable of enforcement. We must assume that the city council enacted the ordinance intending thereby to fix a limit or maximum rate of speed beyond which the street cars might not be lawfully operated upon the public streets. If this has been done, then under our holdings the running of such cars in excess of the stated limit is negligence *per se*, and the instruction given by the trial court is not open to the objection made.

The obscurity in the language of the ordinance provision is occasioned by the introduction therein of the word ''average.'' It is a well-established canon of construction that so far as possible each word of a statute or ordinance must be given effect according to the common and approved usage of the language, and it is to be rejetced or ignored as meaningless only when no other conclusion can fairly be reached. We have therefore to ask what reasonable effect or meaning can be given to the word ''average'' in the connection in which it is here found. As ordinarily employed the word is not open to construction. It is the mean between two or more quantities or measures or numbers and is usually mathematically expressed by the quotient of the sum of the quantities, measures, or numbers which are being compared, divided by the number of items used in the comparison; as, for example, the average price of wheat in Chicago, New York, and Boston is found by adding the several prices and *divid-*

ing the sum by the number of markets compared. If the word be applied to something which is incapable of expression in terms of measure or amount, it signifies that the thing or the person referred to is of the ordinary or usual type. For instance, when we say that a person is of average intelligence we mean that he is neither above or below the ordinary with respect to his mental quality or equipment. It may seem at first blush that "average," as applied to the phrase "no greater rate than fourteen miles an hour," could be given its primary signification of a mean between two or more different rates of speed, but investigation will demonstrate that such reading is inadmissible. No average or mean rate of speed can be found or ascertained without two or more known or ascertainable diverse rates from which to compute it. Nothing of the kind is provided by this ordinance, nor does it provide or suggest how we may know or discover the rates which are to be compared.

Let us suppose a penalty to be provided for a violation of this provision and an action brought to enforce it. How would the plaintiff proceed to prove the average rate of speed? Is it the average of the varying speeds at which the car is run on a single trip? Or of its varying speeds during a day or some other period? If of a single trip, how are its varying speeds to be shown with sufficient accuracy? It may possibly be said that this is ascertainable by observing and showing the time taken in the passage of a car between terminals, and, if this does not exceed fourteen miles an hour, the ordinance is not violated. May the motorman, then, lawfully drive his car over one-half or other fractions of the route at the rate of a mile or more a minute if only he is careful to drive the remaining distance at a rate sufficiently low to bring his average for the trip within the specified limit? Surely this is not an allowable interpretation. As we have before said, it is the settled law of this state that the violation of an ordinance or statute intended for the protection of human life is negligence *per se*. Bearing this in mind,

let us assume that a motorman runs his car over one part of his route at a rate greatly in excess of fourteen miles an hour and the remainder of the distance at a rate of, say, eight miles an hour, and while running at the lesser rate strikes and injures a traveler on a street crossing. In such case may the charge of negligence be established by showing that, although the car was moving at the low rate of eight miles an hour at the time of the accident, yet on other portions of the route it had been operated at such excessively high speed that its average for the trip was in excess of fourteen miles an hour? Defendant would be very slow to concede this interpretation, and yet it cannot be avoided if the court's instruction to the jury is to be condemned on the grounds urged in the exception. Indeed, such unreasonable intention cannot be imputed to the makers of the ordinance. We can see of no way in which "average" can be given any of its generally accepted definitions without practical nullification of the entire ordinance, unless, possibly, we may say the city council used the word in the secondary sense of ordinary or usual, intending the limit of fourteen miles an hour to apply to the company in the general conduct of its business under normal or ordinary conditions, leaving it possible to exceed the limit in emergencies or times of necessity without being chargeable with negligence. Without now adopting that construction, it is sufficient to say that even upon such theory there was no error in the instruction, for there was neither plea nor proof of necessity or emergency. It must not be forgotten that, so far as this restriction is concerned, the ordinance is one adopted in the interest of public safety and for the protection of human life and limb. It is therefore the duty of the company and of the courts to give the provision such reasonable construction as will effectuate its purpose, and, if there be in it a word or phrase of obscure or doubtful meaning, the doubt so created should be solved, if reasonably possible, in a manner to promote the intention of the act and not to defeat it. Therefore, whether we reject the word as

meaningless in this connection or give it the somewhat vague construction above suggested, there was no prejudice to the defendant in the trial court's instruction.

IV. The appellant excepts to the court's refusal of its request to charge the jury as follows:

No. 11: In order to find that the plaintiff, James Long, comprehended the danger of undertaking to cross the track without looking for and ascertaining the near presence of the approaching car, if such is the fact, it is not necessary that you should find from the evidence that he possessed the judgment of an ordinary adult, or even of a boy of over fourteen years of age. If he had sufficient intelligence and sufficient knowledge of the running of cars along that street to know and comprehend the danger of crossing the car track without some effort to ascertain whether a car was approaching and in near proximity and made no effort to do so, then he was guilty of negligence in attempting to cross as he says he did.

No. 16: The defendant is a public service corporation and as such, and under its franchise, it owes a duty to the traveling public to make regular trips, and on time within the limits of the ordinance speed, whenever this can be reasonably done, and the running of the street cars conformably to the ordinance regulation is a service useful to the public and required by implied contract as well as by the term of the ordinance in evidence. This necessarily forbade that the cars should be stopped or delayed or the proper speed slackened, except as there was a necessity therefor.

The eleventh request substantially declares that, assuming a certain degree of maturity of judgment in the plaintiff, then his failure to observe the visibly approaching car was negligence as a matter of law. This

10. STREET RAILWAYS: contributory negligence: instruction.

is clearly inadequate as a statement of the law for several reasons, of which it probably is sufficient to note its failure to mention the effect of any distraction of plaintiff's attention as he entered the zone of danger. This subject has already been sufficiently discussed in the preceding paragraph of this opinion.

The sixteenth request embodies an attempt to set out in

an instruction an abstract statement of the duty which a
public corporation for the operation of a street railway owes

11. SAME: In-
struction.

to the traveling public by virtue of its fran-
chise.   While such discussion is not in the
strict sense irrelevant to the issue being tried, it is collateral
in its nature, and we think the court could properly refuse
to enter the field to which the request invited it.  If a court
gives a jury the rules of law directly applicable to the con-
sideration of the case, it is sufficient, and any attempt to go
into a discussion of the philosophy of such rules or reasons
for their existence is more apt to divert attention from the
case on trial and befog the real issue to be determined than
to aid in a proper decision of the controversy between the
parties.

Again, even as an abstract statement of the law, the final
clause of the request is objectionable in that it declares that
the duty of the company to the public forbids it to stop or

12. SAME.

slacken the speed of its cars except where
there is a necessity for such expedient and
does not in any way enlighten the jury as to what would con-
stitute a ''necessity'' within the meaning of the rule and is
accompanied by no suggestion whatever of the duty to so
operate and control the movement of its cars as to avoid, so
far as is reasonably practicable, all injuries to persons right-
fully upon the street.

V. Finally the point is made that the damages allowed
are excessive.   The verdict and judgment below were for
$7,500.   The recovery is in a sense liberal, yet we are not

13. PERSONAL IN-
JURY: exces-
sive damages.

prepared to say that it is so excessive as to
demonstrate the existence of prejudice or
passion in the jury.  We are pointed to the
undoubted fact that for a considerable time juries have de-
veloped a tendency to increased liberality in the award of
damages for personal injuries of a serious character.  It may
also be said that courts show an increased hesitation to inter-
fere with such awards where the amounts assessed are not

clearly arbitrary and in unquestioned disproportion to the injury. But has not the value of human life and an unmaimed body also appreciated with the advancing level of education and skill in the various departments of human industry and the enlarged scope of opportunity for men to achieve advancement and success? Is not the life and service of the average man of today worth more than it was fifty years ago? In the case before us the boy, it is true, is of humble parentage; his father is foreman of a section gang upon the railroad, earning $60 per month. At the time of his injury he was a little past nine years of age, with long expectancy of life. The evidence of physicians and other tends to show that plaintiff's foot and ankle from the heel forward were badly crushed and mangled, necessitating an amputation of all the front part of the foot and removal of part of the ankle bones. His face was badly contused and his shoulder bone broken, causing an impairment of the use of an arm. He was also injured about the head, rendering him unconscious for six or seven days. The muscles upon the injured limb have shrunken. He is permanently crippled and disfigured. He was attended at the operation by three surgeons and has had the attention and care of the members of his family. That his injuries are very severe is too apparent for argument. That his crippled condition unfits him for many employments and will impair his efficiency in many others is also clear. The jury could rightfully find that he has borne much pain and suffering from these injuries. For all these things he is entitled to compensation. His father has been made liable for the service of surgeon and hospital expenses to a considerable sum. The time and service of the parents and other members of the family in nursing and caring for him is not of inconsiderable value. When injured he was just arriving at the age when he could be of material help and service to his parents, and of these they have been to a great extent deprived. All these elements of damage are in the case because, as we have seen,

the claim therefor was assigned to the plaintiff and recovery of compensation demanded. Appellant is not therefore justified in treating the entire recovery as the jury's estimate of compensation for injury to the plaintiff's earning capacity alone. Many other elements than this one item enter into the grounds of plaintiff's right of recovery, and we cannot say that he has recovered more than he is fairly entitled to. Other questions discussed by counsel are controlled by the conclusions we have already announced.

There is no error in the record requiring a new trial, and the judgment below is *Affirmed*.