Gail H. Dow, Appellee, v. Des Moines City Railway Company, Appellant.

**Evidence:** leading questions: harmless error. In this action for injury to plaintiff because of the alleged negligent operation of a street car, the plaintiff was asked a leading question, which was objected to, but the court without ruling upon the objection asked plaintiff a question, to which defendant excepted, but which plaintiff answered; and it is held that there was no error of which the plaintiff could complain, as the court's interrogatory was not objectionable, and it would be a rare case which would demand a reversal because of an unanswered leading interrogatory.

**Street railways:** injury to pedestrian: contributory negligence: evidence: instruction. As bearing on the question of care exercised by plaintiff in going behind a standing street car onto another track on which a car was coming from the opposite direction, it was proper to show that the gong on the coming car was defective, although there was no specific charge of negligence in that respect; and the court's instruction as given excluded a consideration of this evidence on the question of defendant's negligence as charged in the petition, as effectually as the instructions requested and refused.

**Same:** contributory negligence: instruction. The court's instruction regarding the facts to be considered in determining the question of whether plaintiff was free from contributory negligence is held not subject to the objections that it invaded the province of the jury, singled out facts favorable to plaintiff, was misleading, or incorrect as a statement of the law.

**Same.** In order to recover for injuries received as the result of defendant's alleged negligence the plaintiff must prove freedom from negligence which in any manner contributed to the injury, and the instructions in this case plainly advised the jury on this subject and directed a consideration of all the facts bearing upon this question in determining the same.

**Same:** crossing accident: care required of pedestrians. The care

required of one about to cross a steam railway track does not apply with equal rigidity to one in crossing a street railway track, especially where the street railway is upon a public street which pedestrians have the right to use; and while one may not go heedlessly upon a street car track he need not be constantly on guard for approaching cars, but the degree of care required is that which an ordinarily careful person would exercise under like circumstances for his own safety.

**Same.** In crossing a street railway track a pedestrian has the right to assume, in the absence of notice or knowledge to the contrary, that cars will be run in accordance with law and custom regarding rate of speed and the giving of signals, and with some reference to the rights of those upon the street; but this rule does not relieve a pedestrian from the exercise of ordinary care and prudence for his own safety.

**Same:** CONTRIBUTORY NEGLIGENCE: EVIDENCE. The plaintiff in this action had crossed the street to post a letter in the mail box of a car, and while recrossing the street and just after stepping out from behind this car was struck by another car on the other track, and the evidence is held to require a submission of the question of her contributory negligence in failing to observe the approaching car.

*Appeal from Polk District Court.*—HON. JAMES A. HOWE, Judge.

THURSDAY, JUNE 16, 1910.

ACTION at law to recover damages for injuries received by plaintiff due to being struck by a car upon defendant's line of road. Defendant denied any negligence on its part and pleaded that plaintiff was guilty of contributory negligence. Trial to a jury, verdict and judgment for plaintiff, and defendant appeals. *Affirmed.*

*Guernsey, Parker & Miller,* for appellant.

*W. C. Strock* and *Thomas A. Cheshire,* for appellee.

DEEMER, C. J.—Defendant is a corporation operating

a street railway system in the city of Des Moines. Its Ingersoll Avenue Line running east and west through a residential district is double tracked; west-bound cars taking the north, and east-bound the south tracks. These tracks are standard gauge, to wit, four feet eight and one-half inches, and the distance between the two tracks is five feet six inches. The cars which ran over these lines were from eight feet to eight feet and two inches in width. All the cars on defendant's line carried United States mail boxes, and the public was invited to stop them at street crossings for the purpose of depositing mail in these boxes. Defendant's Ingersoll Avenue Line crosses streets running north and south and numbered from Seventeenth to Thirty-Ninth inclusive. At the intersection of Twenty-Ninth and Ingersoll Avenue, there was at the time of the accident in question a small frame structure at the southwest corner of the street intersection used by persons contemplating passage upon defendant's cars as a waiting station. From Thirty-Fourth Street east to Twenty-Eighth there is a downgrade varying from one and one-third to four and one-ninth percent. Nine hundred and seventy feet and a fraction west of the west side of Twenty-Ninth Street at its intersection with Ingersoll Avenue is the beginning of a curve in defendant's line of road. This is a three percent curve. The grade of the tracks from the east end of this curve to Thirtieth Street is four and one-ninth percent; from Thirtieth Street to Twenty-Ninth it is one and seventy-five-one-hundredths percent; and from Twenty-Ninth to Twenty-Eighth two and nine-tenths percent. The grade of the curve is three and two-thirds percent. This curve, as we have said, begins nine hundred and seventy feet west of Twenty-Ninth Street and two hundred and sixteen feet west of Thirtieth Street. From any point north of the waiting room and south of the north track on Twenty-Ninth Street there is a plain view of cars approaching from the west

of from one hundred to one hundred and five rods. There were many houses on both the north and south sides of Ingersoll Avenue; but these did not obstruct a view of cars approaching from the west for the distance indicated.

At the time of the accident plaintiff, who is a married woman, was living two blocks south of Ingersoll Avenue and one block east of Twenty-Ninth Street. She left her home at half-past four or a quarter to five p. m. February 24, 1908, to post a letter on one of defendant's cars, and went to the intersection of Twenty-Ninth Street with Ingersoll Avenue. A drizzling rain was falling, and she carried an umbrella to shield herself therefrom. As she approached the avenue, she could see a car passing thereon for a block and one-half south of said avenue, and she saw no cars pass the crossing which she was approaching on the day in question. The schedule time for cars at that time was every seven or eight minutes. As we have said, the day was cloudy, and it was raining, and plaintiff went to a point north of the waiting station, where she had a clear view of defendant's track both east and west —westward for the distance already indicated. Here she stopped and looked westward for an approaching car, standing there for two or three minutes. Discovering no car approaching, she looked toward the east and discovered one approaching from that direction, which was then somewhere between Twenty-Eighth and Twenty-Ninth Streets. She immediately crossed all the tracks and waited for the west-bound car to pass her and to stop, either to receive her letter, discharge passengers, or both. This west-bound car stopped on the west side of Twenty-Ninth Street in such position that the door, which was in the center of the car, was on the west side of Twenty-Ninth Street and just opposite the place where she was standing. As the mail box was on the rear of the car, plaintiff immediately proceeded to the east end of the car and there deposited her letter in the box. The west-bound car then

started, and plaintiff, at the same time, proceeded in a southern or southwesterly direction to recross the tracks, when she was struck by an east-bound car and received the injuries of which she complains. There is testimony that this east-bound car was running at least twenty-five miles per hour, and also to the effect that it threw plaintiff something like eighty-six feet. She might have gone farther but for the fact that she was thrown against and struck a boy who was walking westward on Ingersoll Avenue. The car also ran from three hundred to four hundred feet after it struck plaintiff before it could be stopped.

The negligence charged against the defendant is as follows:

(1) That the motorman on the east-bound car which struck the plaintiff was negligent in that he ran his car by the car, which had stopped to discharge passengers, at a rate of speed exceeding three miles per hour. (2) That the motorman on the east-bound car was negligent in that he ran his car down a descending grade without having such car under perfect control. (3) That the motorman on the east-bound car was further negligent because he failed to sound his gong for a distance of fifty feet west of the front end of the west-bound car, until he had passed the west-bound car. (4) That the motorman on the east-bound car was further negligent in that he passed the intersection of Twenty-Ninth Street and Ingersoll Avenue at a rate of speed prohibited by the ordinance of the city of Des Moines regulating the speed of his car and limiting its speed to twelve miles per hour. (5) The motorman on the east-bound car was negligent in that he failed to exercise ordinary care in running his car at a proper and lawful rate of speed at the time the plaintiff was struck and injured by said car.

In her petition plaintiff also made the following, among other, allegations:

That on the day she was injured, and for a long

time prior thereto, there was a general custom prevailing among motormen on the cars of the defendant railway company that, when a car on a parallel track passed another car which had stopped to discharge passengers at a street crossing, the passing car would slow down to a speed of not to exceed three miles an hour, and the motorman ring his gong from the time the moving car was within fifty feet of the front end of the standing car until he passed, and that the plaintiff knew of this custom. . . . That at the time plaintiff was injured, and for some years before, there was a general custom prevailing among the motormen of the defendant railway company that, when their cars were going down descending grades, the motorman would hold the car under perfect control at all times, which custom was known to the plaintiff. That at the time and for a long time prior to the date of the plaintiff's injury, there had prevailed among the motormen of the defendant railway company a general custom to sound their gongs before crossing intersecting streets, and cross-walks, and hold their cars under perfect control, which custom was known to the plaintiff. Plaintiff further states that at the time of her injury, and for a long time prior thereto, there had prevailed among the motormen of the defendant railway company a general custom to stand at their levers, attend strictly to their duties, and use the utmost care to prevent any kind of an accident to passengers getting off or on the cars of the defendant, or to persons crossing the streets or in any other way liable to be injured by the cars of the company, which custom was known to the plaintiff.

Plaintiff introduced an ordinance of the city of Des Moines prohibiting the running of cars at the point in question at a greater speed than twelve miles per hour, and also produced testimony to prove the customs pleaded by her.

Under the facts disclosed, there can be little if any, doubt of defendant's negligence. Indeed, if there were nothing more in the case than excessive rate of speed, that would be enough, under the circumstances shown,

to take the case to the jury on the question of defendant's negligence.

II. Reversal is sought on the ground of claimed errors of the trial court in the admission and rejection of testimony, and in the giving and the refusal to give

1. EVIDENCE: leading questions: harmless error.

certain instructions, and it is strenuously insisted that under the undisputed testimony plaintiff was guilty of contributory negligence as a matter of law and should not be allowed to recover for the consequences of the collision. We shall first take up the rulings on the admission and rejection of testimony. It is claimed that the court erred in permitting plaintiff's counsel to propound certain leading questions to his witnesses. A question somewhat leading in form was propounded by counsel to plaintiff herself which was objected to by defendant's counsel. Without ruling upon the objection, the trial court propounded this question to the witness, which was answered as shown: "By the Court: State the fact as to where you looked. (Defendant excepts.) A. I looked just as I crossed the track." There was no error here of which defendant may justly complain. The interrogatory propounded by the court was not objected to, and had it been, the objection would have been without merit. Moreover, it is a rare case indeed which will be reversed because a leading question is propounded but not answered.

Although defendant was not charged 'with having a defective gong on its east-bound car, plaintiff was permitted to prove, over objections, that the gong upon this

2. STREET RAILWAYS: injury to pedestrian: contributory negligence: evidence: instruction.

car was defective. We think this testimony was admissible as bearing upon the question of plaintiff's care in going from behind the west-bound car and onto the south track upon which the east-bound car was approaching. There was a dispute in the testimony as to whether the gong on this latter car was rung at all as

it approached Twenty-Ninth Street. And if the gong was so defective that it could not be rung, or if rung that it could not be heard, the fact was material as bearing upon plaintiff's care in going upon the south track behind the west-bound car.

In this connection defendant asked the following instruction, which the trial court refused to give:

You are instructed that some evidence has been introduced tending to show that the bell or gong on the east-bound car was somewhat defective. In regard to this matter, you are told that there is no charge in the plaintiff's petition that the defendant was negligent by reason of having a defective gong on the car, or by reason of the fact that the said gong was out of repair, and you will therefore not consider the evidence with respect to the defective gong as bearing upon the acts of negligence charged in plaintiff's petition, nor would you be warranted in basing your finding of negligence upon the fact, if it be a fact, that said bell was defective.

The instructions of the trial court on this point, so far as material, are as follows:

The plaintiff, in her petition, alleges that the defendant was negligent in the following respects: (1) In that the motorman on the east-bound car ran said car past the intersection of Twenty-Ninth Street and Ingersoll Avenue at a rate of speed prohibited by the ordinances of the city of Des Moines regulating the speed of street cars and limiting the speed of such cars to twelve miles an hour; (2) in that the motorman on the east-bound car ran said car at a greater rate of speed than was proper in the exercise of ordinary care, at the time when, and the place where, the plaintiff was injured; (3) in that that the motorman on the east-bound car failed to sound the gong on said car as said car approached and passed the west-bound car at the intersection of Twenty-Ninth Street and Ingersoll Avenue at the time of the accident. It was the duty of the defendant, in the operation of the car in question, to exercise ordinary care, and a failure

on its part to exercise such care, as charged by the
plaintiff in her petition, would constitute negligence.
. . . In determining whether the defendant was neg-
ligent, you will consider only the acts charged by the
plaintiff as negligence, set forth and enumerated in the
last preceding instruction, that have been proven, if any,
as was the proximate cause of the injury to the said Gail
H. Dow. . . . If the plaintiff has not so established
such negligence, if any, of the defendant, and that the
injury to the plaintiff was the direct result of such negli-
gence, so charged, set forth, and proven, if so proven,
then there can be no recovery in this case.

It seems to us that the instructions given quite as
effectually eliminated the thought that the defective gong
might have been considered by the jury as a part of
the negligence charged as the instruction asked.

III. Peremptory instructions directing the jury to
find for defendant because of plaintiff's contributory negli-
gence were asked by appellant's counsel and refused.
This ruling is challenged; but consideration thereof will be
deferred until we reach the subject of plaintiff's conduct
at and just before the time of the accident. Instructions
ten and eleven given by the trial court are complained
of. They read as follows:

(10) In determining whether the plaintiff was guilty
of any negligence which in any way contributed to her
injury, you will consider the definitions of 'ordinary care,'
**3. Same:** 'negligence,' and 'contributory negligence'
**contributory** elsewhere given you in these instructions,
**negligence:** 
**instruction.** and you will consider, as shown by the
evidence: The place where the plaintiff was injured and
the surroundings thereabout; where the plaintiff came
from, where she was going, and the manner thereof; the
number of street railway tracks on said street at said
place; whether plaintiff, before crossing said tracks from
the south to the north side thereof, and before attempt-
ing to recross said tracks, looked to the westward; the
distance a car approaching from the west, on the south
track, could have been seen from the place where plaintiff

was at and immediately before the time she crossed or attempted to cross said tracks; whether plaintiff did or did not see the car approaching on said south track at said time; what the plaintiff thereafter did, and the length of time which thereafter elapsed before her injury; the general custom and usage, if any, at the time of the accident in question, of motormen on moving cars, in relation to sounding the bell or gong, or slackening the speed of such cars, on passing a standing car loading or unloading passengers, or a car just starting from a stop, at street intersections; what the plaintiff knew, if anything, in relation to such custom and usage, if any, and whether she relied thereon; what plaintiff was doing; whether the plaintiff was using and exercising the senses, with which she was endowed by nature, as required in the exercise of ordinary care; what the plaintiff knew, or in the exercise of ordinary care should have known; what the plaintiff did, or in the exercise of ordinary care should have done; together with any other facts or circumstances shown in this trial showing, or tending to show, whether the plaintiff was guilty of any negligence contributing to her injury.

(11) If the plaintiff, at the time and place in question, before crossing defendant's street railway tracks, looked to the westward for an east-bound car, and there was none in sight, though she was able to and did see for such a distance along the south track of the defendant company that a car coming from the west on said track, at a lawful rate of speed, could not have arrived at the place where she was injured at the time of her injury, nor until she would have had time to recross said south track in safety, had she not been injured, then, in that event, in the absence of notice or knowledge to the contrary, the plaintiff might, in the exercise of ordinary care, presume that a car from the westward, if approaching, would do so at a lawful rate of speed. The plaintiff also, in the absence of notice or knowledge to the contrary, had a right to presume that the motorman on said east-bound car would not run said car at a greater rate of speed than was proper in the exercise of ordinary care, and that said motorman would sound the gong on said car as required in the exercise of ordinary care. And

the defendant had a right to presume that the plaintiff, in crossing or recrossing or attempting to recross its tracks, would use and exercise the senses with which she was invested by nature, such as the senses of seeing and hearing, as required in the exercise of ordinary care, and that she would, in all other respects, exercise ordinary care on her part.

The objections to these are: "First, they invade the province of the jury; second, they single out the concrete facts favorable to plaintiff, and fail to single out such facts growing out of the same transaction, as were favorable to the defendant's theory; third, they are misleading; fourth, they give undue prominence to the facts on which plaintiff relies to recover; fifth, they do not state the law applicable to the case correctly."

As opposed to the eleventh instruction given, defendant asked the following:

(16) The mere fact, if such you find the fact to be, that the plaintiff, before she crossed to the north side of the tracks and before the west-bound car had reached the crossing and had stopped, looked to the west to see whether a car was approaching, would not, in itself, be sufficient to warrant you in finding that the plaintiff was free from contributory negligence.

(17) Unless you find from the evidence that, under the circumstances disclosed by the testimony in this case, a person of ordinary care and prudence would not have looked to see whether a car was approaching from the west after starting across to the north side of the tracks before the west-bound car had reached the crossing in question and before the letter in question had been mailed, the plaintiff has failed to show that she exercised ordinary care, and your verdict in this case should be for the defendant.

It also asked these instructions:

(18) Ordinary care requires one about to cross a street railway track to use his senses to ascertain whether

he may safely do so, and this must be done at a time and place when it will enable one to determine by the information so acquired whether it will be safe to make the crossing in question. In the case at bar it appears from the testimony of the plaintiff that she did not use her senses to ascertain whether or not the car which it is alleged caused the injury complained of was approaching after she left the south side of the tracks and passed in front of the west-bound car, intending to mail her letter upon that car and return. You are instructed that her failure to use her senses to ascertain whether a car was approaching at a time which would enable her to determine whether it would be safe to cross the south track in returning was such a lack of ordinary care upon her part as precludes a recovery in this case.

(8) While the plaintiff has the right to presume the defendant, in the operation of its cars, would not be negligent, still this fact does not relieve the plaintiff from exercising care on her part, nor from using her senses of seeing and hearing for the purpose of avoiding accident, and even though you may find that the defendant was negligent in one or more of the particulars charged in plaintiff's petition still if the plaintiff failed to exercise reasonable care on her own part for her own safety, and such lack of care contributed in any degree to her injury, she can not recover.

Other instructions were also asked which need not be set out, as enough have been given to disclose the points relied upon.

The tenth instruction, being the first one copied in this division of the opinion, is not vulnerable to the objections lodged against it. It does not invade the province of the jury or single out facts favorable to plaintiff. It is not misleading, nor is it incorrect as a statement of the law. It is such an instruction as should have been given, and as we read it impartially directs the jury regarding the facts to be considered in determining whether or not plaintiff was free from contributory negligence.

In the first, tenth, and thirteenth instructions given

by the trial court the jury was instructed that plaintiff could not recover unless she show that she did not by her own negligence contribute to her injury.

4. Same.

We here quote the following excerpt from the tenth instruction bearing upon this subject: "You will determine whether there was any negligence on the part of plaintiff, which, in any degree, contributed to her injury. That the plaintiff was free from contributory negligence she is required to prove, and the law is that where one is injured in any manner, and his or her own negligence has contributed, in any way to such injury, no recovery can be had therefor, although there may have been negligence on the part of the defendant without which such injury would not have occurred." The following also is reproduced from the thirteenth instruction: "A street railway crossing is a place of danger, and every one who uses it is presumed to know such fact, and is required to exercise ordinary care to avoid accidents. It is the duty of such person or persons to refrain from any act of negligence." It is needless to say that these instructions plainly told the jury that plaintiff was required to show her freedom from negligence which in any manner contributed to her injury, and that the jury should consider all the facts recited in the first instruction complained of in determining that question.

The eleventh instruction is the one which is most seriously challenged, and that goes to the very heart of the case. It is entitled to careful consideration at our hands. Defendant's counsel seriously and ably contend that this instruction is an inaccurate statement of the law, and that it runs counter to the doctrine of the following cases: *Ames v. Waterloo Co.*, 120 Iowa, 640; *Beem v. Electric Co.*, 104 Iowa, 563; *Artz v. Railroad Co.*, 34 Iowa, 153; *Payne v. Railroad*, 39 Iowa, 523; *Stanley v. Railroad Co.*,

5. Same: crossing accident: care required of pedestrians.

119 Iowa, 526; *Orr v. Railroad Co.*, 94 Iowa, 423; *Bloomfield v. Railroad Co.*, 74 Iowa, 607. We may as well eliminate the cases against steam railways, for it is now the rule of this court, many times announced, that the care required of one about to cross the track of a railway operating heavy trains by steam at a high rate of speed does not apply with equal rigidity to the crossing of a street railway track. And this is especially true where the street railway is laid upon a public street where pedestrains and travelers have a right to be. See the *Orr* and *Beem* cases, *supra; Perjue v. Light Co.*, 131 Iowa, 710; *Ward v. Light Co.*, 132 Iowa, 578; *Doherty v. Railway Co.*, 144 Iowa, 26; *Powers v. Railway Co.*, 143 Iowa, 427; *Kern v. Railway Co.*, 141 Iowa, 620. The rationale of the rule is well expressed in *Lynam v. Union Ry. Co.*, 114 Mass. 83, from which we quote the following: "The cases relating to injuries suffered by being struck by a locomotive engine at a railroad crossing afford no test of the degree of care required of the plaintiff in this case. The cars of a horse railway have not the same right to the use of the track over which they travel, do not run at the same speed, are not attended with the same danger, and are not so difficult to check quickly and suddenly, as those of an ordinary railroad corporation. A person lawfully traveling upon the highway is not therefore bound to exercise the same degree of watchfulness and attention to avoid the one as to keep himself out of the way of the other."

It is not to be understood, however, that we have in any manner relaxed the rule requiring the exercise of ordinary care by one who is about to cross or go upon a street railway track. As said in the *Reem* case, *supra*, "It is true, as contended by the appellant, that it is the duty of persons in charge of a street car to be watchful and diligent to avoid doing injury to others; but persons

who cross street railway tracks also have duties to perform. They can not assume that, without care on their part, they will be seen, and protected from harm, and the car stopped, if necessary, to avoid a collision. They are not, as a rule, required to use the same degree of care as would be required if they were about to cross an ordinary commercial railway track. *Orr v. Railway Co.*, 94 Iowa, 426. But street cars are usually operated according to established time schedules, and their efficiency and value to the public demand that they be so operated. To require, whenever a person approaches the track, that they be stopped, or the speed slackened, until it is evident that the person will not be endangered by the running of the cars, would be to impose a serious, and in many cases an intolerable, burden upon the railway corporation, and subject its patrons to annoying and injurious delays, without any substantial reason for so doing, or benefit of importance to any one. Ordinarily, a pedestrian who approaches a street railway track may, and does, without appreciable effort or loss of time, ascertain if a car be near, and it is his duty to do so."

We have never held that one may go heedlessly and blindly upon a street car or other track and still be free from contributory negligence. But we have never said, even in steam railway cases, that one must be constantly on guard for approaching trains or cars. The degree of care required of him is not the highest, but ordinary, care and prudence, and whether or not he exercised such care is ordinarily a question for the jury—dependent largely upon the circumstances of each particular case. To go upon the track of either a steam or street railway without exercising any care for his safety is negligence, and such negligence will prevent a recovery. But it is not necessary that one keep his eyes constantly upon the track, or that he stop and listen or do more than an ordinarily careful person would under

the circumstances.   In the steam railway case of *Winey
v. Railroad Co.,* 92 Iowa, 622, we said:

> The words we have italicized make it the duty of
> a person to look and listen for approaching trains at all
> points in his passage, and hold him guilty of contributory
> negligence if he fails.   This rule is too broad:   First,
> because it usurps the province of the jury; and, next,
> because it requires the traveler to keep his eyes constantly
> upon the track for trains at all points leading to its
> passage, whether the view of the track is obstructed or
> not.   The rule, no doubt, is that if the traveler, having
> looked and listened without seeing or hearing an approach-
> ing train within a reasonable distance of the crossing,
> is, by reason of a neglect of the railroad company to blow
> the 'statutory' whistle, run upon and injured, liability
> attaches therefor; and if the view of the track is ob-
> structed by any means, so as to render it impossible or
> difficult to learn of the approach of a train, or there
> are complicating circumstances calculated to deceive or
> throw a person off his guard, then whether it is negli-
> gent on the part of the traveler who fails to look and
> listen is a question of fact for the jury to determine
> from the circumstances of each particular case.

Again, in the steam railway case of *Moore v. Rail-
road Co.,* 102 Iowa, 595, we said, in speaking of the duties
of one about to cross a steam railway track:

> The law does not declare that a person about to go
> upon a railway crossing must look and listen, or stop
> and listen, at any particular time or place, but at the
> time and place that the exercise of ordinary care requires.
> These well-recognized rules are not questioned, and we
> need not refer to any of the many authorities cited in
> the arguments. . . . An ordinance of the city pro-
> vides that locomotive engines, shall not be run within
> the city limits at a greater rate of speed than six miles
> per hour, and that the bell shall be rung on approaching
> street crossings and when any person or animal may be
> upon the track.   While these requirements did not relieve
> the plaintiff from the exercise of ordinary care, nor from

the duty of looking and listening, they, and the presumption that they would be observed, are proper to be considered in determining whether the plaintiff was negligent. He had no reason to expect the engine or train to pass from one direction more than from the other; hence it was his duty to look in both directions. He had a right to presume that no engine would be run at a greater speed than that prescribed in the ordinance, and that the bell would be rung at crossings as required. We have seen that, if plaintiff had looked west when about forty feet south of the crossing, he must surely have seen the approach of this engine in time to have stopped and avoided the accident. The contention is that he was negligent in not again looking west after he passed the point sixty feet south of the track. We do not think it should be said, as a matter of law, that plaintiff was guilty of negligence in not again looking westward after he passed the point sixty feet south of the track. He had looked westward at Shaw street, and from the sixty-foot point, and saw nothing. It was his duty to look east as well as west, and he did so. While we do not say that the plaintiff was not negligent, we do not think that it should be said, as a matter of law, that he was. Whether, in view of all the circumstances under which he acted, he was negligent, is a question about which we think men may honestly differ, and therefore one that should have been submitted to the jury. Counsel present calculations based upon estimates of time, the speed of the engine and horse, and measurements of distance, to show that the plaintiff was, or was not, negligent. Such estimates are not usually exactly correct, but mere approximations, and it should be left to the jury to determine what basis, if any, they may afford for a conclusion.

Certainly no more stringent rule should be applied to the crossing of street railway tracks. It is said in the last cited case and in the *Perjue* and *Ward* cases, *supra,* that one about to cross a railway or street railway track has the right to assume that ordinary precautions would be taken for his safety by the person in charge of the car and that cars

6. Same.

would not be run negligently or in violation of express statutes or ordinances. Surely one about to cross a street railway track has the right to assume that he will not recklessly be run down and injured. He has the right to assume, in the absence of evidence to the contrary, that cars and engines will be run according to law and custom, and with some reference to his rights as a traveler or pedestrian, upon the street. This rule does not, of course, absolve him from all care for his own safety. He must still exercise the ordinary care and prudence required of him to avoid injury; but, in determining whether or not he exercised it, he has the right to assume that the steam or street railway company will not violate the law. The instant case is not one where plaintiff did not look at all. The testimony shows that she did look just before crossing over the north track of defendant's road, and that if the car which struck her had been coming at a proper rate of speed she would have seen it. As it was, the car was beyond the range of her vision, and a jury was justified in finding that it came down to Twenty-Ninth Street at a high and dangerous rate of speed without any warning and without slowing down as it approached the west-bound car, which had stopped to discharge passengers and to allow plaintiff to mail her letter. She says that she did not see any car approaching from the west as she started to cross the north track of the defendant railway company, and the jury was justified in believing that she could not have seen it. If it had been running at a proper rate of speed, she would or should have seen it, and doubtless this accident would not have occurred. The instruction complained of is in line with the cases we have cited, and, notwithstanding the forcefulness of appellant's argument for a departure from these rules, we are not disposed to do so, although perhaps some of the language used in one or two of these opinions is a little broader than the

writer would care to again indorse. As will be noticed, most of the instructions asked by defendant's counsel run counter to the views herein expressed, and were therefore rightly denied. In so far as they announced correct rules, they were in effect given by the trial court in its charge to the jury. Our conclusions find support in the following, among other, cases from foreign jurisdictions: *Wahlgren v. Railway Co.*, 132 Cal. 656 (62 Pac. 308, 64 Pac. 993); *Dallas Co. v. Hurley,* 10 Tex. Civ. App. 246 (31 S. W. 73); *Driscoll v. Railway Co.*, 97 Cal. 553 (32 Pac. 591, 33 Am. St. Rep. 203); *Evansville Co. v. Gentry,* 147 Ind. 408 (44 N. E. 311, 37 L. R. A. 378, 62 Am. St. Rep. 421); *Terien v. Railway Co.,* 70 Minn. 532 (73 N. W. 412); *Peterson v. Railway Co.,* 90 Minn. 52 (95 N. W. 751); *Consolidated Co. v. Glynn,* 59 N. J. Law, 432 (37 Atl. 66); *Chicago Co. v. Fennimore,* 199 Ill. 9 (64 N. E. 985); *Henderson v. United Co.,* 202 Pa. 527 (51 Atl. 1027); *Newark v. Block,* 55 N. J. Law, 605 (27 Atl. 1067, 22 L. R. A. 374) (this case being closely in point); *Smith v. Trunk Line,* 18 Wash. 351 (51 Pac. 400, 45 L. R. A. 169); *Fonda v. St. P. R. R.,* 71 Minn. 438 (74 N. W. 166, 70 Am. St. Rep. 341); *McClain v. Brooklyn Co.,* 116 N. Y. 459 (22 N. E. 1062).

IV. The last proposition relied upon for a reversal is that plaintiff was guilty of contributory negligence as a matter of law in failing to look before going to the north side of the tracks and in failing to

7. SAME: contributory negligence: evidence.

look before recrossing the south track. As to the first proposition, plaintiff testified that she did look just before she crossed the track to the north side and saw no car. There was some testimony in support of this claim, and some to the effect that she did not look, or if she did that she saw the car coming. A jury was justified in finding that she looked, and that she did not see, and could not have seen,

the east-bound car. This was enough to .take the case to the jury on this proposition. Whether or not she should have looked again ·before recrossing the tracks is a more doubtful question. That she did not look farther than her line of vision would permit from her position at the rear of the west-bound car is quite clear. But, as already indicated, a jury may have found that, while she was carrying an umbrella, it was raised far enough above her head so that she might have looked; that the west-bound car obstructed her view; and that the motorman in charge of the east-bound car did not sound the gong, slow down his car, or do anything to warn persons who might be attempting to cross the track or to save them from danger. Having looked just before crossing the tracks to the north, it was for the jury to say whether or not plaintiff should have waited until the west-bound car had passed far enough away so that she might have seen the east-bound car or taken some other precautions for her safety. Upon this proposition the excessive speed of the east-bound car, which is practically conceded, becomes a very material consideration. We think this whole matter of plaintiff's contributory negligence was for the jury, and that the court properly submitted that issue as a mixed question of law and fact. Regard must be had of the fact that the west-bound car made considerable noise in starting, and that according to the testimony it was in such position that plaintiff could not see the east-bound car until it was directly upon her. The testimony shows that two men alighted from the west-bound car, and that they started south immediately after the west-bound car started, heard no car from the west, and narrowly escaped a collision with the car which struck and injured plaintiff. One of them was within three or four feet of plaintiff and within one foot of the east-bound car when it struck her. This man heard

·no noise of the approaching car and did not see it until he was pulled back by his companion.

We discover no prejudicial error in the record, and the judgment must be, and it is, *affirmed*.