S. W. Waring, Appellant, v. Dubuque Electric Company, Appellee.

**NEGLIGENCE:** Contributory Negligence—When Jury Question. Principle reaffirmed that negligence *per se* may not be declared on any state of facts, unless the court can say that such must be the judgment of all fair-minded men. Evidence as to a collision between an automobile and a street car on a dark, foggy night reviewed, and held to present a jury question on the issue of contributory negligence.

*Appeal from Dubuque District Court.*—M. F. Donegan, Judge.

November 15, 1921.

ACTION to recover damages for personal injury resulting from a collision between an automobile driven by the plaintiff and a street car operated by the defendant upon the streets of Dubuque. At the close of all the testimony, the court directed a verdict in favor of defendant. Plaintiff appeals.—*Reversed.*

*Kenline, Roedell & Hoffmann,* for appellant.

*Nelson, Duffy & Nelson,* for appellee.

FAVILLE, J.—I. Locust Street in the city of Dubuque runs north and south, and is one of the main residential streets of the city. It is intersected by Thirteenth Street. The appellee operates an electric street railway upon the public streets of the city of Dubuque; and at the time of the accident in question, one of the routes of the street cars in said city provided for the movement of a street car southward on Locust Street to Thirteenth Street, where it turned east, and passed along Thirteenth Street to Main Street. There is no street-car track on Locust Street south of Thirteenth Street. North of Thirteenth Street the street-car track is in the center of Locust Street, and on Thirteenth Street, the curve is approximately in the center of the intersection of the two streets. The track then passes eastward in the center of Thirteenth Street. Locust Street is comparatively level, from Twelfth Street northward to Sixteenth Street. At the place of intersection, Locust Street is about 38 feet wide between the curbs, and Thirteenth Street is about 40 feet between the curbs.

At the intersection of Thirteenth and Locust Streets there is a street lamp, with frosted globe and shade. The pole from which this light is suspended is located on the northwest corner of the intersection of the streets in question. The lamp was suspended on an arm extending in a general southeasterly direction toward the center of the street. This arm is 12 feet in length, and the lamp was suspended about 22½ feet from the surface of the street. The lamp is described as a 20-ampere, 15-volt lamp, manufacturer's rating, 600 candle power. The lamp can be raised and lowered by means of a rope on a pulley, and its distance from the street would depend on how high it had been

raised by means of the rope. The street car in question was a two-truck car, lighted on the inside by 20 incandescent lights. The evidence shows that the car was equipped with what is known as a ''Golden Glow'' modern, electric street-car headlight.

The accident in question occurred in the evening of November 7, 1918. It was a ''dark, cloudy, foggy, drizzly night.'' The fog is variously described by the witnesses as from ''slight'' to ''very dense.'' The appellant and his wife were in an automobile, which was being driven by the appellant. The automobile was closed with side curtains composed of ordinary isinglass and waterproof material. The car was equipped with a wind shield, which was closed. Appellant and his wife had been driving for some time, attending to various errands in the business part of the city, and started north on Locust Street from Ninth Street. Appellant was driving on the right-hand side of the street, four or five feet from the east curb. As he approached Thirteenth Street, the automobile was moving at about eight or ten miles an hour. The automobile was equipped with ordinary electric headlights, which were turned on at the time. The moisture in the atmosphere had gathered upon the wind shield, so that it interfered with the vision of the occupants of the car. As appellant approached Thirteenth Street, he slackened the speed of the automobile, and took off the power, and permitted the car to coast toward Thirteenth Street. The pavement of Locust Street is brick, and was wet at the time.

The appellant's testimony was to the effect that, as he approached Thirteenth Street, he looked straight ahead down Locust Street, and to the right, and that he saw nothing upon or approaching the intersection, and that the crossing appeared to him to be clear. Before he crossed any part of Thirteenth Street, however, he testifies that he saw a single light northward in Locust Street. He testified that the light was dim, and appeared to be standing still. He also testified that, owing to the fog and darkness, he could not see what was behind this light. It appears that there was a curtain in the car, which was drawn down, behind the motorman. Appellant states that he listened, and heard no street-car gong or bell. Thereupon, he proceeded northward on Locust Street, and passed the south line of Thirteenth Street until he reached a point estimated at from three

to six feet south of the street-car track, when he observed the light of a street car moving toward him on the curve in the intersection of the street. Immediately, he applied the brakes, turned the car to the left, and "killed" the engine, and the car skidded somewhat and came to a stop, headed northwest, a few feet south of the track. In this position, it was struck by the right front end of the street car, which collided with the right front end of the automobile, carrying the automobile some distance to the southeast; and the appellant received the injury for which damages are sought in this action.

At the close of all the testimony, the appellee's motion for a directed verdict was sustained, on the ground of the contributory negligence of the appellant. Under the well recognized rule, we must construe the testimony in the light most favorable to the appellant, in determining whether he should be held guilty of contributory negligence, as a matter of law. *Gregg v. Town of Springville*, 188 Iowa 239. It is unnecessary for us to cite authorities to the proposition that, unless all reasonable and fair-minded men would agree that the appellant was guilty of contributory negligence, the court should not so hold, as a matter of law, but should submit the question to the determination of the jury.

The testimony of the wife of the appellant, who accompanied him, was of the same general character as that of the appellant.

The southeast corner of the intersection of the two streets is known as the "Lawther corner." The third house north of Thirteenth Street was occupied by a Mr. Lange. On the night in question, Mrs. Lange came to the doorway of her home, looking for her husband. She says there was a dense fog, and a person could not see very far. She testified that she looked south toward Thirteenth Street, and saw two dim lights coming up Locust Street to Thirteenth Street, not far from the Lawther corner. As she saw those two lights at or about the Lawther corner, she saw the street car going by her house to the south. She noticed the speed of the car, and noticed that no bell was rung and no gong sounded. She thought the car was going about 25 miles an hour, and that it did not slacken. She could not tell whether the automobile was moving or standing still, at the time of the collision. The Lange house, where the witness

was, is about 104 feet from the north side of Thirteenth Street.

Mr. Lange, who was coming home at the time, was on the north side of Thirteenth Street, walking westward, 50 to 75 feet from the place where the collision occurred. He testified that he did not hear the sound of any gong or ringing of the bell, but saw the lights and the outline of an auto to the south of the street-car track, and noticed the light of the street car as the front came around the curve on Locust Street and struck the auto.

Dr. Heisey testified that he was with Mr. Lange; that it was a damp, misty night, and that the mist was very heavy; that, as he went west on Thirteenth Street with Lange, the little boy accompanying him dropped a music roll and an umbrella; and that, as the witness stopped to pick them up, the crash came. He testified that he did not hear any bell or the sound of any gong; that the mist was such that it impaired the vision, and one could not see as far as on a clear night, and could not see objects distinctly. He did not see either the auto or the street car before he heard the sound of the collision.

Mr. Lawther testified that it was a foggy and misty evening, and that it was difficult to make out objects through the mist, and that, at the time of the collision, he was in the dining room of his residence. His attention was attracted by the noise and breaking of glass. He ran out to the place of the collision. He said that, after he came out, he recognized Mr. Lange, who was then about half way between the intersection and the house where he (Lange) lived; and that he was not able to tell who Dr. Heisey was, but could see the figure of a man with Lange.

The motorman testified that he first saw the lights of the automobile when he was about in the middle of the block between Thirteenth and Fourteenth Streets. He testified that he was ringing the air gong, and that he stopped the car on the curve, and that it was standing still when the collision occurred.

The director of the weather bureau in Dubuque testified in regard to the weather conditions on the day in question, and that, according to the record, the rain of the day ended at 5:50 P. M., and began again at 8:45 P. M. The observations were taken on the roof of the Federal building. He testified that the

record of a fog and its density would not be an exact record of conditions in relation thereto in all parts of the city.

We have not attempted to set out in detail all the evidence in the case, but sufficient to show in a general way conditions surrounding the accident in question, as bearing on appellant's negligence.

The sole question for our determination at this point is whether or not the court was correct in directing a verdict against the appellant on the ground of contributory negligence. Many cases are cited to us by counsel for the respective parties. It is obvious that precedents of this kind cannot be controlling, because of the variance in the facts of the different cases. Actions of this general character have been before the courts frequently, and we shall not attempt a discussion of the many cases involving somewhat similar facts, nor attempt to differentiate between the various holdings. We shall content ourselves with a review of some of our own cases.

At the outset, it is well to call attention to the fact that we have recognized a distinction between cases similar to the one at bar and cases of collision where steam railways are involved. In *Dow v. Des Moines City R. Co.*, 148 Iowa 429, we said:

"We may as well eliminate the cases against steam railways, for it is now the rule of this court, many times announced, that the care required of one about to cross the track of a railway, operating heavy trains by steam at a high rate of speed, does not apply with equal rigidity to the crossing of a street railway track. And this is especially true where the street railway is laid upon a public street, where pedestrians and travelers have a right to be [citing cases]."

In *Perjue v. Citizens' E. L. & G. Co.*, 131 Iowa 710, we said:

"The traveler upon the street is entitled to walk or drive therein; and, while he must make use of his senses to avoid injury, he has a right to expect that persons in charge of street cars will also exercise their faculties, to avoid running him down. It is too much to ask that the attention of the foot traveler shall be wholly centered on the street cars. He must also be on the lookout for other moving vehicles. He must avoid

collision with other foot travelers. If he be near other tracks of other railways, he must guard against danger from that source. He must note his immediate path, to avoid defects therein; and these and the multitude of happenings with which the streets of a city abound, all of which call for a glance, render it impracticable, if not impossible in many instances, to avoid accidents, where cars are operated at a reckless rate of speed, and especially where their approach is not heralded by adequate and timely danger signals. It follows that, unless the alleged want of care is so flagrant and so clearly established that there is no room for difference of opinion thereon among fair-minded men, the jury must be left to determine the right of the matter.''

In *Watson v. Boone Elec. Co.*, 163 Iowa 316, we said:

''Plaintiff was rightfully upon the street, and could rightfully cross the railway track at any time or place within the public highway. True, he was bound to exercise reasonable care in so doing; and, if he drove upon the track with reckless indifference to injury from a car which he knew, or ought to have known, was dangerously near, then no action will lie in his favor. But he was not required to do more than the man of average or ordinary prudence may be expected to do, under like circumstances. He was not required, as a matter of law, to stop his team and look and listen. He was required to make reasonable use of his senses; and if, as he turned upon the track, he looked to the west, and saw no car, or if he saw one, and it was so far away he could reasonably believe he had time to cross in safety before it would reach that point, he was not guilty of negligence, as a matter of law, in so doing. This is a question which depends upon inferences and deductions from all the numerous circumstances connected with the accident, and its answer comes clearly within the province of the jury.''

In *Fisher v. Cedar Rapids & M. C. R. Co.*, 177 Iowa 406, we said:

''Unless the law positively enjoins upon one the duty to do, or the omission to do, a particular act, negligence is a question of fact, into the determination of which many circumstances and conditions are interwoven, one with the other. This court has uniformly adhered to the doctrine that fact questions are

for the jury; and if, upon any reasonable theory of the circumstances shown or admitted, honest and fair men searching for the truth may differ as to the conclusions to be reached upon the facts disclosed, the finding of the jury is conclusive upon this court.''

In *Kendall v. City of Des Moines,* 183 Iowa 866, we said:

''The driver of an automobile has the right to assume that the street is in a safe condition for travel, and that the city has exercised a proper degree of diligence and caution to keep it so. *Frazee v. City of Cedar Rapids,* 151 Iowa 251; *Frohs v. City of Dubuque,* 169 Iowa 431. It is, however, the duty of the driver of an automobile to exercise ordinary and reasonable care for his own safety and that of the property intrusted to his care. Ordinary care, as applied to the driver of an automobile, is such care as prudent men in such occupation ordinarily use, taking into consideration the time, place, condition of the highway, weather, the character of the instrumentality employed, the presence of other travelers or vehicles upon the streets, the extent to which the same is lighted, and many other facts and circumstances often present and necessary to be considered.''

Applying these well established rules to the facts of the instant case, we think that the question of whether or not the appellant was guilty of contributory negligence, under all the circumstances shown, was one for the determination of the jury, and not a matter of law, to be determined by the court. The appellant was driving his automobile at a rate of speed which could not fairly be said to be unreasonable or excessive, even under the weather conditions. He was upon the side of the street where he was required to be, as a matter of law. It was not negligence, as a matter of law, to be in an automobile with side curtains on, and with the wind shield closed. The appellant testified that, as he approached Thirteenth Street, he looked and listened for a street car ahead of him, and looked to the right, as he was required to do, to observe whether any vehicles were coming from that direction. He testified that he saw a light through the fog, that appeared to him to be standing still. He was familiar with the situation, and had a right to expect that a street car approaching from the north would sound the gong.

The appellee's main contention is that, by reason of the

lights on the automobile and the street car, and the adjacent street light, the appellant was bound to have seen the street car, if he had looked; and that the testimony of the other witnesses with regard to seeing the car and pedestrians at different distances is conclusive that the appellant must have seen the street car in time to have avoided the injury, if he had looked in the direction from which it was coming.

Under the facts disclosed by the record, however, this is not conclusive upon the appellant, as a matter of law. It is obvious that there is a difference between the situation of the appellant, located behind the wind shield in his automobile, and that of witnesses at different places in the vicinity of the collision. The ability to see in a heavy fog on a dark night by the aid of artificial lights depends very largely upon the situation of the observer and the conditions immediately surrounding him. The illumination at the place of the accident varied as the vehicles approached each other through the fog.

Under all the facts and circumstances disclosed by the evidence, we are satisfied that it was a question for the jury to determine whether or not the appellant acted as a man of ordinary care would have acted under the circumstances. We cannot say that all fair-minded and reasonable men would agree that, under the facts as disclosed by this record, the appellant was guilty of contributory negligence, and that the court should so hold, as a matter of law. We hold that the court was in error in directing a verdict in favor of the appellee. As bearing upon the general propositions herein discussed, see *Barnes v. Barnett*, 184 Iowa 936; *Powers v. Des Moines City R. Co.*, 143 Iowa 427; *Bridenstine v. Iowa City Elec. R. Co.*, 181 Iowa 1124; *Doherty v. Des Moines City R. Co.*, 144 Iowa 26; *Guy v. Des Moines City R. Co.*, 191 Iowa 302; *Adams v. Union Elec. Co.*, 138 Iowa 487; *Ward v. Marshalltown L. P. & R. Co.*, 132 Iowa 578; *Seitsinger v. Iowa City Elec. R. Co.*, 181 Iowa 739; *Flannery v. Interurban R. Co.*, 171 Iowa 238.

Appellee cites us to *Lauson v. Town of Fond du Lac*, 141 Wis. 57 (123 N. W. 629), and *West Const. Co. v. White*, 130 Tenn. 520 (172 S. W. 301). In *Kendall v. City of Des Moines*, supra, we said:

"We do not feel inclined to adopt the doctrine of the Wisconsin and Tennessee courts."

In *Owens v. Iowa County*, 186 Iowa 408, we reaffirmed this declaration. We now adhere to it. Nothing in *Beemer v. Chicago, R. I. & P. R. Co.*, 181 Iowa 642, *Yetter v. Cedar Rapids & M. C. R. Co.*, 182 Iowa 1241, *Claar Trans. Co. v. Omaha & C. B. S. R. Co.*, 191 Iowa 124, *Duggan v. Chicago, M. & St. P. R. Co.*, 179 Iowa 1072, and similar cases, is inconsistent with our holding in this case.

II.    Other propositions are argued by counsel and urged as error in the trial of the cause. We do not deem it necessary to consider these, in view of the fact that the cause is remanded for a new trial; as the errors complained of are not likely to occur upon the retrial of the case.

For the reasons pointed out, the judgment of the district court is reversed, and the cause is ordered remanded.—*Reversed and remanded.*

EVANS, C. J., STEVENS and ARTHUR, JJ., concur.