Byron F. Rosenberg, Appellant, v. Des Moines Railway Company, Appellee.

No. 40629.

October 27, 1931.

G. F. Brooks, for appellant.

Corwin R. Bennett, for appellee.

KINDIG, J.— On September 18, 1929, about six o'clock in the morning, Byron F. Rosenberg, the plaintiff-appellant, when going to his work at the Des Moines Clay Company, endeavored to drive his Chevrolet four-door coach from his home southward over the double tracks of the Des Moines Railway Company, defendant-appellee. As the appellant was thus proceeding across the south or second track, an interurban car struck the Chevrolet coach and inflicted upon appellant the physical injuries and did the damage to the automobile of which complaint is here made. These double tracks (the one herein designated as the first, or north, and the other the second, or south), were maintained by the appellee Railway Company between the Des

Moines business district northwestward to Urbandale, a village outside of the Des Moines city limits.

At the point of collision, the railway tracks were maintained on appellee's private right of way. Appellant, at the time in question, lived near this private right of way and had access to a public highway by using a private road over appellee's right of way. The understanding of the manner in which the private road ran from appellant's house to the railway tracks may be aided by the accompanying photograph.

It is the claim of appellant that on the morning in question, he drove his Chevrolet coach from the house southward over the private road down to the bridge shown in the above photograph. When in the center of this bridge, appellant claims to have made observation for possible oncoming cars or trains that might be traveling over either railroad track. While approaching the double tracks from his home, the first was the north, or outbound, track and the second the south, or inbound, track. From the center of the bridge where the observation is claimed to have been made, appellant said he could see a great distance down the outbound track, in the direction of the Des Moines business district, and knew such track was clear. In the other direction, (toward Urbandale) however, the appellant declares he could only see a distance of 300 feet because of a bank near the bridge and a curve in the tracks. With his line of vision thus limited, appellant maintains that he looked in that direction for an incoming car but saw none. Then he shifted his automobile into intermediate gear and proceeded slowly across the tracks. He was operating his car at a speed of about three miles per hour and could have stopped within a distance of four feet. Upon arriving at the first rail of the second track, appellant saw the interurban car and proceeded a foot or two farther when he was struck, as before explained.

According to appellant, the appellee was negligent in three respects, as follows: First, the interurban car was propelled at an excessive rate of speed; second, the motorman failed to keep a proper outlook; and, third, the motorman did not have the interurban car under control. Hence, appellant urges that the Municipal Court erred in directing a verdict in defendant's favor.

Appellee, on the other hand, denies its own negligence,

but argues that even if there were such negligence, nevertheless appellant's contributory negligence is sufficient to bar a recovery. Consequently appellee insists that the municipal court's action is fully justified in the record.

One witness for the appellant testified that appellee's car was traveling 45 miles per hour when approaching the private right of way under consideration. Although this testimony is somewhat contradicted by previous statements made by the witness and is otherwise minimized and doubtful, nevertheless, for the purposes of this discussion, we will assume that the appellee's car was operated at a negligent rate of speed. There is no testimony sustaining appellant's claim that the motorman did not keep a proper outlook. Moreover, if the interurban car were not under control at the time in question, it was because the same traveled at an excessive rate of speed. No contention is made by appellant under the last clear chance rule. Therefore, the deciding question is narrowed to one of contributory negligence. Has appellant shown himself free therefrom? A review of the record compels a negative answer.

"The presence or absence of contributory negligence, generally speaking, is peculiarly a question for the jury. * * * Moreover, it is to be remembered that there are some instances where it is the province of the court, and not the jury, to judge whether or not the contributory negligence is such as to bar a recovery." Murphy v. Iowa Electric Company, 206 Iowa 567, reading on page 571.

"If there is a conflict in the evidence as to what the person accused of contributory negligence did or did not do, the question is then one for the jury." Murphy v. Iowa Electric Company, (206 Iowa 567), reading on page 572.

For the purposes of this discussion, appellant's own version of his actions is considered to be the truth. Accordingly, under this theory there is no conflict in the evidence concerning what appellant did or did not do. Necessarily, then, no jury question can arise on this proposition. But a jury question may arise if men might fairly and reasonably differ concerning the result of appellant's actions.

"* * * even though it is known what was done by (the)

* * * individual * * *, yet if his conduct is such that there may fairly be different opinions with respect to it, and one man honestly and reasonably says it was in accord with ordinary prudence, while another, just as sincerely, and with equal reason, contends it was not, then there is a jury question.'' Murphy v. Iowa Electric Company, (206 Iowa 567), reading on page 572, supra.

Measured by this test, did the municipal court properly hold, as a matter of law, that appellant was guilty of contributory negligence? That is the next problem.

Another photograph, here inserted, will reveal to the reader the position of the bridge, the private way across the railroad property, each of the railway tracks, and the claimed obstruction in appellant's line of vision:

To further aid the understanding and reveal the surrounding circumstances, there is here set out a blue print, which, at the right, indicates the private road as a driveway:

PLAT OF
URBANDALE CAR LINE
FROM LEADO AVE TO 38TH ST

As before suggested, appellant testified that from the middle of the little bridge he could see down the inbound track (the second track) over which cars run from Urbandale to Des Moines, a distance of only 300 feet. The engineer who made the blue print, however, asserts that from the middle of that bridge an observer can see in the direction named as far as 500 feet. This witness, however, and appellant disagree concerning obscuring weeds on the bank at one side of the private way as an approach is made from the latter's house to the bridge. Such dispute is probably of the nature to present a jury question. So the discussion will proceed on the theory that appellant could see only 300 feet from the center of the bridge. Obviously, then, he did not have a view of the tracks beyond 300 feet in the Urbandale direction, but appellant understood that. Yet, from the time he left the center of the bridge until he reached the first rail of the second or inbound track, he made no further observation of any kind, although it was daylight. From the center of the bridge to the first rail of said second track is a distance of 25½ feet. It is not claimed that appellant listened at any time either on the bridge or during the journey to the second railroad track, where the collision occurred.

An endeavor is made to excuse appellant from making

further observations, or otherwise protecting himself, on the theory that it was necessary for him, because of the cool morning, to work the choke on the automobile. Much reliance is here placed upon Butterfield v. Chicago, R. I. & P. R. Co., 193 Iowa 323; Long v. Railway & Light Co., 162 Iowa 11; In re Estate of Kern, 141 Iowa 620; Remillard v. Sioux City Traction Co., 138 Iowa 565; Watson v. Boone Electric Co., 163 Iowa 316; Dow v. Des Moines City Railway Co., 148 Iowa 429; Powers v. Des Moines City Railway Co., 143 Iowa 427; Ward v. Marshalltown Light, Power & Ry. Co., 132 Iowa 578, and other cases. Each of the foregoing cases easily can be distinguished from the facts in the present controversy. For example, in Butterfield v. Chicago, R. I. & P. R. Co., (193 Iowa 323), supra, the collision occurred between a train and a motor vehicle. There was an obstruction interfering with the driver's view of the train. Another vehicle proceeded across the railroad tracks immediately in front of the man injured. His attention was thereby diverted. Apparently the train gave no warning signal of its approach. Two men were in the vehicle struck. Testimony was introduced to the effect that both looked for the train. According to the testimony, the men in the preceding vehicle first looked in the direction from which the train was coming and then looked forward, thereby, to some extent at least, throwing the men following off their guard. Diverting circumstances, therefore, were held in the Butterfield case to excuse the men in the vehicle struck by the train from responsibility for what otherwise might have been contributory negligence. Time will not permit a detailed consideration of all the cases above cited. Every one of them, however, can be distinguished from the facts in the case at bar. Here the appellant did not have his attention diverted. What he claims as a diverting circumstance, in fact was not such. As previously indicated, appellant claims that the operation of the choke on the car, made necessary by the cool morning, was a diverting circumstance. Clearly, however, it was not, because appellant knew when he started the vehicle that part of the operation duty would be to manipulate the choke. Under the circumstances, the operation of the choke was a part of the driver's duty the same as under other conditions shifting gears or other manipulation of the car might be required of him. To state the thought differently, the necessity of manipulating the

choke was not a sudden emergency confronting the driver. When he estimated his own safety before proceeding across the tracks, he understood that one of his burdens would be that of manipulating the choke. Wherefore, the manipulation of the choke under this record cannot be said to be a diverting circumstance, for it is not contended that appellant encountered any more difficulty therewith than he originally anticipated. Without a diverting circumstance, then, appellant looked for an oncoming car at the middle of the aforesaid bridge, and then proceeded forward at three miles per hour. His car jerked and it was necessary to propel it over rails two inches high. This all consumed time; yet regardless of the flying seconds, appellant made no further observations to ascertain whether an interurban car might be coming down upon him.

No precaution was taken by appellant for his own safety, although he anticipated an oncoming car. For all that he knew, an approaching car might have been rounding the curve although the same was unobservable when observations were made from the bridge. It is conceded by appellant that at a point "four or five feet" nearer the tracks from where the observation was actually made, he could have seen down the second track for a distance of 470 feet. Plainly the car would have been observable had such observation been made. (By this we do not infer that he should look at any particular place.) Witnesses for appellee, as well as a witness for the appellant, all of whom were passengers on the interurban car, stated that they saw the automobile coming around the obstructing bank when the interurban car was within less than 300 feet from the private crossing. These witnesses, according to the individual testifying, variously thus fixed the distance from the crossing at 225, 125, and 75 feet. We are conceding, however, that appellant's own testimony was sufficient to raise an issue on this proposition, and upon that basis the controversy is being decided.

During this discussion, it is to be remembered that appellant does not claim to have listened at any time. Consequently the only care he exercised was the single observation back 25½ feet from the first rail of the inbound track. Nevertheless, it is said by appellant that his duty was fully performed because he made the observation at such a distance that there would have been safety had the interurban car been operated at a lawful

speed. To sustain this proposition, appellant cites Camp v. Chicago, Great Western Railway Co., 124 Iowa 238; Wolfe v. Chicago Great Western Ry. Co., 166 Iowa 506; Friesner Fruit Co. v. Chicago Great Western Ry. Co., 199 Iowa 1143.

This is true, appellant further declares, because the observation required at an interurban crossing is not as rigid as that demanded for a steam railway crossing. On that proposition appellant cites Waring v. Dubuque Electric Co., 192 Iowa 508, and McCormick v. Railway & Light Company, 146 Iowa 119. After a careful study of appellant's argument, it is clear that he is mistaken when applying the principle announced in the foregoing cases to the facts here presented. Assuming that appellant was justified in believing that the appellee would not negligently operate its cars, yet that does not excuse him from driving over the tracks under the circumstances without using his senses. Appellee's tracks at the place of the collision, as before indicated, were maintained on a private right of way. The care imposed upon street railways which operate cars on public streets, where pedestrians and vehicles are moving to and fro, is stringent. Due care, of course, always must be observed by operators of street and interurban railway companies. Facts and circumstances, however, always determine what is due care. Thus, an interurban car operating between Urbandale and Des Moines over its private right of way undoubtedly, in the exercise of due care, could travel faster than a street car in congested traffic. Everything must depend upon the facts and circumstances.

In previous cases, we have said that the rule for observation at steam railway crossings does not apply in all its strictness to the care necessary when crossing an interurban railway on city streets. Waring v. Dubuque Electric Co., (192 Iowa 508), supra; McCormick v. Railway & Light Co., (146 Iowa 119), supra. However that may be, it is apparent to any reasonable man that appellant did not exercise due care in driving over the private crossing under consideration. Appellee clearly had the preferential right of way. Lundien, Admr. v. Railway Co., 166 Iowa 85; Gray v. Railway Co., 143 Iowa 268. Concerning a street car not running upon its own right of way, we said in Beem v. Tama & Toledo Electric Railway & Light Co., 104 Iowa 563, reading on page 566:

"* * * street cars are usually operated according to established time schedules, and their efficiency and value to the public demand that they be so operated. To require, whenever a person approaches the track, that they be stopped, or the speed slackened, until it is evident that the person will not be endangered by the running of the cars, would be to impose a serious, and, in many cases, an intolerable burden upon the railway corporation, and subject its patrons to annoying and injurious delays, without any substantial reason for so doing, or benefit of importance to any one.''

What is there said concerning a street railway operating on the public streets, applies with more force to an interurban railway operating over its private right of way, where pedestrians and vehicles do not travel to and fro along the line, except at designated crossings.

While, of course, appellee knew of the private crossing and was therefore compelled to operate its cars with the precaution required by such knowledge, nevertheless duty did not demand that it stop its coaches or even slacken their speed just because perchance an automobile approached the crossing. Appellant could not presume that if he negligently drove upon the railway tracks the appellee would save him from injury. Watson v. Electric Co., 163 Iowa 316, cited by appellant, is not in point because there the plaintiff attempted to cross the street railway track in the public streets. Here appellant was crossing the interurban tracks on a private right of way at a place where vehicles and pedestrians did not generally go. How fast could appellant, as a reasonably prudent man, believe the anticipated interurban car would proceed over the 300 feet viewed by him? For the purpose of demonstrating appellant's negligence, concede that the appellee should have operated its car at a speed not to exceed 24 miles per hour. Yet appellant, under the circumstances, would not have been justified in attempting to cross the tracks without due care. Manifestly it was necessary for appellant to proceed from the middle of the bridge to a point beyond both interurban tracks, where clearance between the overhang of the interurban car and the back end of the automobile would be assured. Concession is made that it was 25½ feet from the middle of the bridge to the north rail of the

second track (track from Urbandale to Des Moines). If it were approximately five feet from the outside of this first rail to the outside of the second rail, the distance in which appellant would be compelled to go would be at least 30½ feet. When making the observation before described, appellant was sitting in the driver's seat of his Chevrolet coach. Hence, it was necessary, to avoid a collision, that he clear that portion of the automobile extending from the seat to the back end. Such part of the car was not included within the 25½ feet above-named. Assuming, then, as is probably true, that such back portion of the automobile covered at least 6¾ feet, then the total distance estimated is 36¾ feet. Furthermore, the overhang on the interurban car undoubtedly would be not less than one foot. Adding this foot to the 36¾ feet, above mentioned, the total would be 37¾ feet. This would be the least distance appellant would have to travel before the interurban car arrived in order to avoid a collision.

Suppose, then, as before indicated, that the interurban car was traveling 24 miles per hour and appellant moving at the rate of three miles per hour, the interurban car would travel eight miles while appellant was traveling one mile. Necessarily, then, the interurban car would go 302 feet while appellant traveled the necessary distance. A collision, then, would have occurred had the interurban car, during the 300 feet in question, traveled at the reasonable rate of 24 miles per hour. It would not be negligent, under ordinary circumstances, in the absence of an ordinance limiting the speed, for such car to proceed at the rate of 24 miles per hour in the outlying district, where vehicles and pedestrians traverse the railroad private right of way at designated crossings only. Nothing here could indicate to appellant that such ordinary rule would not apply. There is no speed limit imposed by ordinance so far as the record discloses. A traveler being able to see an approaching car for a distance of at least 300 feet, the private crossing, while obstructed in the distance, is not what is ordinarily known as a blind crossing.

What might be the law under other facts, we do not now decide. In residence districts, automobiles are, under the law, frequently permitted to travel 25 miles per hour. Clearly, then, appellant, as a reasonably prudent man, could not under the conditions assume that the interurban car at the time in ques-

tion would proceed at a rate of speed less than 24 miles per hour. Under the supposition, therefore, it is demonstrated how negligent appellant was for proceeding across the second track without using his senses to discover an approaching car. That the defendant must use his senses under such circumstances is firmly established by this court. Barboe v. Sioux City Service Co., 205 Iowa 1074; Doherty v. Railway Co., 137 Iowa 358; Landis v. Interurban Railway, 166 Iowa 20; McCormick v. Railway & Light Co., (146 Iowa 119), supra; Beem v. Tama & T. Elec. Ry. & L. Co., (104 Iowa 563), supra.

Obviously appellant did not use his senses, for he did not listen at any time. During the interurban's approach to the crossing, the motorman constantly rang the bell in order to warn motor vehicles that the interurban was approaching. Also appellant did not look after leaving the bridge while slowly traveling the distance previously mentioned. Of course, appellant was not required to keep a constant outlook. Perhaps, too, it was not incumbent upon him to look at any particular place, but having looked from the bridge and seeing only 300 feet, it surely behooved him to use his senses while proceeding across the track. See cases above cited. Also, as having some bearing upon the question, see Dean v. Chicago, B. & Q. R. Co., 211 Iowa 1347, and Bannister v. Illinois Central Ry. Co., 199 Iowa 657. Neither danger nor confusion arose because of the first tracks, for appellant knew that he was perfectly safe there. Confronting appellant at the time was but one duty, namely, to exercise due care while proceeding across the interurban tracks. He was in no way confused and his attention was not diverted. Because of the circumstances above discussed, men cannot fairly and reasonably differ concerning the result of appellant's action. Plainly he was guilty of contributory negligence. Such contributory negligence, under the circumstances, was the proximate cause of appellant's injury and damage.

Accordingly, the judgment of the Municipal Court should be, and hereby is, affirmed.—Affirmed.

Faville, C. J., and Evans, Morling, and Grimm, JJ., concur.